[Crim. No. 3394.   Second Appellate District, Division Two.—February 17, 1941.]

THE PEOPLE, Appellant, v. PABLO SERNA, Respondent.

David C. Marcus for Respondent.

MOORE, P. J.—The plaintiff appeals from an order setting aside the information wherein Serna was accused of grand theft. Defendant's motion was made upon the grounds that: (1) Defendant was committed without probable cause; (2) that a public offense had not been charged; and (3) that the transcript of the preliminary trial disclosed at most a series of petty thefts (Pen. Code, sec. 995).

Defendant is an alien residing in Los Angeles County. He applied to the State Relief Administration for unemployment relief. His application was filed October 4, 1937, in which he made the statement that he was unemployed and that no member of his family had any source of income. However, at the time of his application, his wife had been employed since the preceding September by the California Walnut Growers Association, with whom she continued until April, 1938, and through which she earned the sum of $459.89. The relief furnished defendant amounted to $347.76 which was paid to defendant in semi-monthly installments of $28.98 each.

The sole question for determination as stated by the Attorney-General is "whether the defendant can be charged with the crime of grand theft or whether he is only chargeable with a series of petty thefts." Because of the fact that the total sum received from the state exceeded $200, which is the value necessary to constitute the crime of grand theft, and because defendant made a written application containing a false statement prior to receiving any relief, the argument is made that all sums received by defendant from the State Relief Administration, after having made his application, are parts of one plan, one design, one taking from the state. In support of this contention, appellant cites section 484 of the Penal Code and certain decisions. (*People* v. *Sing*, 42 Cal. App. 385 [183 Pac. 865]; *People* v. *Dillon*, 1 Cal. App. (2d) 224 [36 Pac. (2d) 416]; *People* v. *Fleming*, 220 Cal. 601, 610 [32 Pac. (2d) 593].) Where a party commits a series of successive acts of taking as "the result of a single felonious intent, moved by a single, unintermittent force, such series constitutes only one continuous act", one offense against the state. (*People* v. *Dillon, supra*; Wharton's Criminal Law, 11th ed., sec. 1169.) Whether a series of successive acts of taking constitutes several thefts or one single crime must be deter-

mined by the particular facts and circumstances of each case. One of the guiding rules for reaching such determination is that where a wrongdoer has lawfully gained possession of property, each of his successive acts in appropriating parcels of the trust fund to his own use is a separate embezzlement, i. e., theft. But where he has by unlawful means acquired possession of the money or chattels of his neighbor, his guilt of the crime of theft is not dependent upon whether he thereafter appropriates the fruits of his theft by a single act or at successive intervals. (*People* v. *Stanford*, 16 Cal. (2d) 247 [105 Pac. (2d) 969].) If the circumstances of a case do not show that the exact time of completion of the misappropriation is controlling, the court may conclude that the several transactions constitute one offense. But where the evidence establishes clearly the commission of several offenses by distinct appropriations, all different sums, on separate occasions, then they do not comprise a series of acts of a single crime but they are many distinct crimes.

While the general intent to deprive another of his possessions may have been framed in the mind of the accused before he completed his first offense, yet subsequent acts whereby the accused appropriated different sums of money or separate items of goods or chattels are distinct offenses. (*People* v. *Rabe*, 202 Cal. 409 [261 Pac. 303].) If the defendant had the fraudulent intent to obtain property by false representations then his obtaining property on the first occasion, under the inducement of his false representation, constituted a completed crime. "When at a later date other property was obtained under the influence of the fraudulent representations which had earlier been made, a separate offense was committed." (*People* v. *Ellison*, 26 Cal. App. (2d) 496 [79 Pac. (2d) 732].) ■ In the instant case, the receipt of money from the State Relief Administration was in each instance a separate offense. (*People* v. *Miles*, 37 Cal. App. (2d) 373 [99 Pac. (2d) 551].) His original application furnished defendant an *entré* or a basis for negotiating for each of the payments subsequently received. While his fraudulent statement in his application for relief tainted all of his transactions (Pen. Code, sec. 484) it did not have the effect of amalgamating all of them into a unified deed. Before he could receive even the first payment, he was required to endorse upon the warrant the following: "The payee in accepting and endorsing this warrant certifies that he or she

has correctly reported his or her status to the said State Relief Administration; has complied with its regulations and is eligible for relief." It was therefore essential that the same endorsement be executed by defendant upon each subsequent warrant without which he could not have gained any further sums. He was never in a position at any time to appropriate to his own use any sum belonging to the state in excess of $28.98. In his reply brief, the Attorney-General says that "Exhibit A" certified by Mrs. Hamren and approved by A. Parsons was a continuous authorization of the accounting division of the finance department of the State Relief Administration to issue a payroll semi-monthly and that from said payroll the warrant was to be drawn by the state controller continuously semi-monthly thereafter in the sum of $28.98, until this authorization was revised or cancelled by the social worker. But the testimony of Mr. Pettitt, assistant to the deputy chief accounting officer of the State Relief Administration, testified that each two weeks after November 8, 1937, he checked the record and sent to the state controller's office the payroll record for $28.98. The fact that there existed a reservoir of unlimited resources from which he might secure any sums of money, even in excess of $200, did not make the taking of any one of the sums of $28.98 a part of any crime except the petty theft which was committed by the taking of that particular sum. The State Relief Administration might have been closed on the day following defendant's receipt of his first payment, or the administration might have detected the falsity contained in the application, which would at once have terminated defendant's right to relief, or at any time after filing his application defendant might have experienced a change of heart, any one of which would have closed the state's resources against any further taking by defendant. In view of the foregoing, the order is affirmed.

Wood, J., and McComb, J., concurred.