[Civ. No. 17021.   First Dist., Div. One.   Jan. 26, 1956.]

JEWEL DAWSON, Petitioner, v. SUPERIOR COURT OF ALAMEDA COUNTY et al., Respondents.

Dodge & Evans for Petitioner.

J. F. Coakley, District Attorney, R. Robert Hunter, Chief Assistant District Attorney, and Wayne M. Hooper, Deputy District Attorney, for Respondents.

BRAY, J.—This petition for writ of prohibition raises primarily the interesting question as to whether the taking of a series of payments of welfare benefits based upon one false representation constitutes grand theft or merely petty thefts.

RECORD

Petitioner was charged in an information with two counts of grand theft and one count of violation of section 1550, Welfare and Institutions Code (perjury).* ▮▮▮ The first count charges that "on or about the 13th day of April, 1953, to November 19, 1954," petitioner unlawfully took the property of the county of Alameda consisting of $1,154.93. The second count charges the taking of $231 between about November 19, 1954, and February 28, 1955. With reference to the first count, the evidence at the preliminary examination showed that on April 13, 1953, petitioner, who theretofore had been receiving aid to needy children, executed a renewal application for such aid. In this application petitioner stated that she had no income other than a small amount from her husband. Based upon this application the Alameda County Welfare Department made payments of $56 each on the first day of May, June, July and August of 1953, totalling $224 for the period, no one of which payments would have been made if the department had known of defendant's employment. June 29th, defendant signed an application in Contra Costa County but to the Alameda County Welfare Commission and on one of its forms, for similar aid without disclosing any employment or income therefrom. This application was received by the Alameda County Welfare Department July 9th. There is some controversy as to whether payments thereafter made by Alameda County were based upon this application or the one of April 13th. On September 1st the payments to defendant were increased to $82 per month based upon a new budget computed by the Welfare Department when informed by defendant of a change in her living conditions. Payments at $82 per month continued until changed to $110 per month commencing in May, 1954. Payments again changed to $52 in November, $77 in December and then to $153 in January and February, 1955. November 19, 1954, defendant signed an application for aid to needy

---

*No contention is made that the evidence at the preliminary examination did not show probable cause upon this charge. The petition here relates only to the two counts of grand theft. Therefore no further mention will be made of the third count.

children (marked "Redetermination"). This application also failed to disclose any employment or income.

During all the period for which the above payments were made defendant was in the employ of Peralta Hospital and except when absent on leave received monthly pay. At no time did she disclose her employment nor her income therefrom. Her earnings follow: For April, 1953, $138.08; for May, June, July and August, monthly sums in excess of $200; for September, $209.85; October, $71.08; December, $91.07. From April, 1954, to February, 1955, she received over $200 per month except for one month in which she received only $191.07. No payments would have been made had the Welfare Department known that defendant was employed and receiving said income. The payments made in the months of May to November, 1954 (both inclusive) are the basis of the first count. Those made in December, 1954, to February, 1955 (both inclusive), are the basis of the second count.

### ONE OFFENSE OR A SERIES OF OFFENSES

In *People* v. *Howes*, 99 Cal.App.2d 808 [222 P.2d 969], where the thefts were committed by larceny, this court reviewed the situation in California concerning the problem of whether a series of thefts constitute one offense or a series of offenses, and pointed out that generally there has been a distinction between thefts accomplished by means of false representations and those accomplished by larceny by trick or device or by embezzlement.

"1. Where the theft is accomplished by means of false representations, each receipt of money or property is usually held to constitute a separate offense, although the false representations were made but once. [Citations.]

"2. In larceny cases, where there are several deliveries by the thief to the seller of stolen goods, all part of the same general transaction, it has been held that there is but one offense. [Citations.] Likewise, a series of thefts from the same employer by an employee, all part of a general plan, constitutes but one offense. [Citation.]

"3. Theft by way of embezzlement has given rise to some difficulties. It has been held that a series of embezzlements from the same owner constitutes separate offenses. [Citations.] But it has been held also that where the defrauded person makes a series of payments to the embezzler in connection with the same transaction, each payment is not a

separate offense, and there is but one offense. [Citations.]" (P. 818.)

One of the cases cited in the Howes case as support for rule Number 1 in the foregoing quotation is *People* v. *Serna,* 43 Cal.App.2d 106 [110 P.2d 492]. Because its facts are quite similar to those in the case at bar, petitioner places great reliance upon it. There in his written application to the State Relief Administration for unemployment relief the defendant stated that no member of his family was employed, while actually his wife was and for some time had been employed. Based upon this untrue application relief was paid him in semimonthly installments of $28.98 each, totaling $347.76. The court held that the money was obtained by false representations and that the receipt of money in each instance was a separate offense, even though his fraudulent statement in his application tainted all of his transactions and was the basis for receipt of the subsequent sums. There was an additional factor in that case which differentiates it from the instant one, upon which factor the court laid stress. There the defendant was required to endorse upon each warrant before he could receive payment a statement that he had correctly reported his status to the administration, had complied with its regulations and was eligible for relief. In our case no such endorsement was required. Subsequent to the Howes and Serna cases is *People* v. *Lima* (1954), 127 Cal. App.2d 29 [273 P.2d 268], where the court held directly contrary to the holding in the Serna case. The Lima case involved theft by false representation. There the defendant falsely represented to the purchaser the weights of the grapes for the sale of which defendant was being paid. The defendant was charged with grand theft based upon the total amounts of the overcharges due to the false weights. The defendant contended that each false weight tag and the overcharge for which it stood could support only a finding of petty theft of the amount of that overcharge. In holding the grand theft charge proper the court quoted from *People* v. *Howes, supra,* 99 Cal.App.2d at page 818: " '. . . The general test as to whether there are separate offenses or one offense is whether the evidence discloses one general intent or discloses separate and distinct intents. The particular facts and circumstances of each case determine this question. If there is but one intention, one general impulse, and one plan, even though there is a series of transactions, there is but one offense . . .' (See also *People* v. *Sing,* 42 Cal.App. 385

[183 P. 865], and *People* v. *Fleming*, 220 Cal. 601 [32 P.2d 593].)'' (P. 34.) Certainly the facts in our case show ''but one intention, one general impulse, and one plan, even though there is a series of transactions . . .'' The apparent distinction in the cases between larceny by trick and device and by embezzlement on the one hand and the offense of false pretenses on the other is a very artificial distinction. ■ Actually in every larceny by trick and device and in most embezzlements there is an element of false representation. ■ Moreover, in most offenses by false representation there is an element of trick and device. ■ ''The offense of false pretenses has always been considered as largely analogous to and closely bordering upon that of larceny.'' (*People* v. *Rabe*, 202 Cal. 409, 415 [261 P. 303].) The distinction that in the one set of cases based upon a certain act each receipt of money constitutes a separate offense, while in the other set of cases based upon a certain act the various receipts of money may be cumulated to constitute but one offense, is very unrealistic and illogical. ■ The many fine distinctions and technical niceties which once existed between the various forms of larceny were done away with in the amendment of 1927 to section 484, Penal Code, and are all included under the term ''theft.'' ■ Because of that fact and because, where a person intends by his false representations to initiate an act which will cause him to receive illegally various sums of money, it is far more reasonable to consider the whole plan rather than its component parts, and because we can see no real difference between a situation where, as in the Lima case, a person adopts a plan to mulct another of money by a series of false representations as to weight of grapes, and a situation where, as here, a person by one false representation adopts a plan to mulct the state of various sums of money, we are constrained to follow the later rule of *People* v. *Lima* rather than the earlier rule of *People* v. *Serna*. We therefore hold that defendant's acts constituted grand theft rather than petty thefts.

## SUBSEQUENT APPLICATIONS

■ Defendant contends that, in any event, the filing of new renewal applications terminated any offenses theretofore committed. No change in payments was made because of the application taken in Contra Costa County on June 29th, at least until September 1st, by which time the payments based on the April 13th application (four at $56 each)

totalled $224, a sum large enough to constitute grand theft. According to the evidence the change made in payments on September 1st and thereafter were not based upon this application but upon a new budget based upon a change in defendant's living arrangements, and the authorities were still relying upon the statements in the application of April 13th.

The application of November 19th upon which the second count is based was on a different form than the preceding ones. Those were applications for renewal of aid, while it was an application for redetermination of aid. It dealt with only one child (the others with two children). An application was taken concerning the other child on November 30th. At the preliminary hearing the committing magistrate held that the evidence was insufficient to hold petitioner to answer on a charge based upon the November 30th application and the count of the complaint dealing with it was dismissed. The evidence shows that the payments made to defendant based upon the November 19th application totaled $231, a sum more than the statutory grand theft minimum of $200.

The evidence at the preliminary examination shows probable cause as to the offenses charged in both counts of the information.

The alternative writ is discharged and the petition for a peremptory writ is denied.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied February 24, 1956, and petitioner's application for a hearing by the Supreme Court was denied March 21, 1956.