[No. C001670. Third Dist. Feb. 22, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
MATTIA SHANTI CAMILLO, Defendant and Appellant.

**COUNSEL**

Steve C. Benton, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Gary A. Binkerd, Cynthia G. Besemer and Kate Killeen, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SPARKS, J.**—This case poses two questions about the welfare fraud statute. (Welf. & Inst. Code, § 10980.) ■■■ The first is whether obtaining more than $400 worth of welfare benefits by false representations for a number of consecutive months constitutes a single felony or only a series of misdemeanors. Welfare and Institutions Code section 10980, subdivision (c) provides that if the total amount of such aid is $400 or less, the crime is a misdemeanor and if more, an alternate felony. We hold that the crime is a felony when those benefits are illegally obtained pursuant to one general scheme. ■■■ The second is whether the classification of such a crime as a felony violates a recipient's constitutional right to due process and equal protection. We hold that it does not and consequently reject the constitutional challenge as well.

Defendant Mattia Shanti Camillo falsely obtained welfare benefits in excess of $2,900 over a period of nine months but never received more than $400 in any one month. She was charged with a single felonious count of violation of Welfare and Institutions Code section 10980 and a separate felony count of perjury under Penal Code section 118.[1] After a court trial, she was found guilty of both crimes. ■■■■■ Imposition of sentence was suspended and defendant was placed on probation on condition she be incarcerated in the county jail for 30 days and pay a fine.[2] Defendant appeals from the order granting probation, contending that the Legislature did not intend to subject recipients in her circumstances to felony punishment for welfare fraud, and that her felony conviction for welfare

---

[1] Defendant does not challenge her felonious conviction of the crime of perjury and we therefore have no occasion to consider that crime.

[2] As we noted in the text, when the total amount of aid obtained is more than $400, the crime is alternately punishable by imprisonment in the state prison or in the county jail. (Welf. & Inst. Code, § 10980, subd. (c).) Under the terms of the probation granted in this case, the crime was a felony. (Pen. Code, § 17, subd. (b).) "It is settled that where the offense is alternatively a felony or misdemeanor (depending upon the sentence), and the court suspends the pronouncement of judgment or imposition of sentence and grants probation, the offense is regarded a felony for all purposes until judgment or sentence and if no judgment is pronounced it remains a felony." (*People* v. *Esparza* (1967) 253 Cal.App.2d 362, 364-365 [61 Cal.Rptr. 167].) The fact that defendant was ordered to serve 30 days in the county jail does not change this result because the "confinement was a condition of probation and did not constitute a sentence within the meaning of Penal Code section 17." (*Id.,* at p. 365.)

fraud is unconstitutional in any event. Because neither contention is persuasive, we shall affirm the judgment.

## FACTS

The facts are uncomplicated and uncontroverted. Defendant was a recipient of aid to families with dependent children (AFDC) and food stamps. Such a recipient is required to submit monthly reports stating her income, and to undergo periodic interviews. During those interviews a recipient must be readvised of the reporting requirements and reaffirm her eligibility. During the period from May 1984 to February 1985, defendant was employed by Ponce Bakery. She submitted monthly reports declaring some, but not all, of her income. She reported income of $1,422.30, and failed to report $1,759.03. Defendant had a recertification interview in December 1984, at which time she reaffirmed her eligibility status and was readvised of her reporting responsibilities. As a result of her failure to report all of her income, defendant was overpaid AFDC and food stamp benefits in excess of $2,900. The trial court found that defendant acted pursuant to a single intention to commit a series of thefts and found her to be guilty of one count of felonious welfare fraud, and one count of perjury. This appeal followed.

## DISCUSSION

### I

Defendant failed to report her income over a period from May 1984 to February 1985. When defendant's criminal activity commenced it was governed by Welfare and Institutions Code section 11483 [all further undesignated statutory references are to this code]. The version of that statute in effect during 1984 provided: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining the aid shall be punished as follows: [¶] (1) If the amount obtained or retained is four hundred dollars ($400) or less, by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine. [¶] (2) If the amount obtained or retained is more than four hundred dollars ($400), by imprisonment in the state prison, or by imprisonment in the county jail for not more than one year. [¶] When the allegation is limited to failure to report not more than two thousand dollars ($2,000) of income or resources, or the failure to report the presence of an additional person or persons in the household, all actions necessary to secure restitution shall be brought against persons in violation of this section as provided in Sections 12250 and 12850. Such action for restitution may be satisfied by sending a registered

letter requesting restitution to the last address at which the person was receiving public assistance." (Stats. 1983, ch. 711, § 4, pp. 2704-2705.)

In 1984, the Legislature rearranged the statutory scheme for welfare fraud, effective on January 1, 1985. (Stats. 1984, ch. 1448.) Summarizing this enactment, the Legislative Counsel noted: "Existing law provides for various criminal offenses concerning the receipt of, or the attempt to receive, aid under the Aid to Families with Dependent Children (AFDC) program and under the Food Stamp Program. [¶] This bill would modify these provisions by, among other things, applying these offenses to all aid programs, including the AFDC program, the Food Stamp Program, and county aid and relief programs." (Legis. Counsel's Dig., Sen. Bill No. 2171 (1984 Reg. Sess.) Summary Dig., pp. 520-521.)

In order to accomplish this objective the Legislature centralized the penalty provisions for welfare fraud into one statute, section 10980, and made it applicable to all welfare programs. That section was enacted to provide in relevant part: "(a) Any person who, willfully and knowingly, with the intent to deceive, makes a false statement or representation or knowingly fails to disclose a material fact in order to obtain aid under the provisions of this division or who, knowing he or she is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he or she is not entitled, or to receive a larger amount than that to which he or she is legally entitled, is guilty of a misdemeanor, punishable by imprisonment in the county jail for a period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine.

"(b) Any person who knowingly makes more than one application for aid under the provisions of this division with the intent of establishing multiple entitlements for any person for the same period or who makes an application for such aid for a fictitious or nonexistent person or by claiming a false identity for any person is guilty of a felony, punishable by imprisonment in the state prison for a period of 16 months, two years, or three years, a fine of not more than five thousan dollars ($5,000), or by both such imprisonment and fine, or by imprisonment in the county jail for a period of not more than one year, or a fine of not more than one thousand dollars ($1,000), or by both such imprisonment and fine.

"(c) Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, the person obtaining such aid shall be punished as follows: (1) If the total amount of such aid obtained or retained is four hundred dollars ($400) or less, by imprisonment in the county jail for a

period of not more than six months, a fine of not more than five hundred dollars ($500), or by both such imprisonment and fine.

"(2) If the total amount of such aid obtained or retained is more than four hundred dollars ($400), by imprisonment in the state prison for a period of 16 months, two years, or three years, a fine of not more than five thousand dollars ($5,000), or by both such imprisonment and fine; or by imprisonment in the county jail for a period of not more than one year, or a fine of not more than one thousand dollars ($1,000), or by both such imprisonment and fine." (Stats. 1984, ch. 1448, § 2, pp. 5075-5076.)[3]

In the 1984 reorganization, section 11483 was amended to read: "Except as specified in Section 11483.5, whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall be subject to prosecution under the provisions of Chapter 9 (commencing with Section 10980) of Part 2. [¶] When the allegation is limited to failure to report not more than two thousand dollars ($2,000) of income or resources, or the failure to report the presence of an additional person or persons in the household, all actions necessary to secure restitution shall be brought against persons in violation of Section 10980. The action for restitution may be satisfied by sending a registered letter requesting restitution to the last address at which the person was receiving public assistance." (Stats. 1984, ch. 1448, § 6, pp. 5078-5079.)

Defendant's fraudulent behavior commenced during the period when it was governed by former section 11483, and it continued into a

---

[3] The first three subdivisions of section 10980 correspond in nearly identical terms to three former statutes. Subdivision (a) embodies former section 11482. (See Stats. 1983, ch. 1235, § 1, p. 4838.) Subdivision (b) embodies former section 11482.5. (See Stats. 1983, ch. 1235, § 2, p. 4838.) And subdivision (c) embodies former section 11483. (See Stats. 1983, ch. 711, § 4, pp. 2704-2705.) The 1984 act thus had the effect of consolidating the penalty provisions for welfare fraud into one statute, as well as extending those penalties to programs in addition to AFDC and food stamps.

Aside from punishment, it is unclear how subdivision (c) differs from subdivision (a). It is true that on its face subdivision (c) does not explicitly require that the false statement or representation be made knowingly or with intent to deceive or defraud. Absent any requirement of scienter, the statute would be legally and constitutionally suspect. (See *People* v. *Vogel* (1956) 46 Cal.2d 798, 801, fn. 1 [299 P.2d 850]; *Morissette* v. *United States* (1952) 342 U.S. 246 [96 L.Ed. 288, 72 S.Ct. 240]. See generally, 1 Witkin, Cal. Crimes (1963) § 52, p. 56.) No doubt such a requirement is implicit in the statute, particularly in light of its use of the phrase "or other fraudulent device." Moreover, the predecessor statute, section 11483, contained identical language and it was construed in *People* v. *Faubus* (1975) 48 Cal.App.3d 1, 5 [121 Cal.Rptr. 167], to require proof of an intent to defraud. In any event, no attack has been launched by defendant against the statute on this ground nor on the ground that subdivision (a) in some manner precludes the charge of the more serious crime under subdivision (c). Consequently, we have no occasion to consider the question further.

period when it was governed by section 10980. That fact does not affect defendant one way or the other. " 'When a statute, although new in form, reenacts an older statute without substantial change, even though it repeals the older statute, the new statute is but a continuation of the old. There is no break in the continuous operation of the old statute, and no abatement of any of the legal consequences of acts done under the old statute. Especially does this rule apply to the consolidation, revision, or codification of statutes, because, obviously, in such event the intent of the Legislature is to secure clarification, a new arrangement of clauses, and to delete superseded provisions, and not to affect the continuous operation of the law.' " (*In re Dapper* (1969) 71 Cal.2d 184, 189 [77 Cal.Rptr. 897, 454 P.2d 905].) ▪ Defendant does not contend that she cannot be prosecuted under section 10980. Instead, she argues that in enacting this section the Legislature did not intend that persons in her position be punished with felony convictions.

We cannot accept defendant's view of legislative intent. ▪ The Legislature has a well-established device by which it may grant a trial court discretion to treat certain offenses as felonies or misdemeanors. (Pen. Code, § 17.) These are the so called "wobbler" offenses. (See *People* v. *Municipal Court (White)* 88 Cal.App.3d 206, 209, fn. 2 [151 Cal.Rptr. 861].) Such offenses are those which are alternately punishable either "by imprisonment in the state prison or by fine or imprisonment in the county jail . . . ." (Pen. Code, § 17, subd. (b).) ▪ In enacting section 10980, subdivision (c)(2) the Legislature clearly intended to treat this type of welfare fraud as a wobbler. Likewise, it is clear that the Legislature chose $400 as the monetary demarcation between wobbler and misdemeanor treatment of welfare fraud. Such a line of demarcation is identical to that chosen for many other theft type offenses. (See e.g., Pen. Code, §§ 484g [using access card without consent], 484h [merchant honoring access card], 487 [grand theft], 487e [theft of dogs].)

Defendant fraudulently obtained aid payments for a period of months by filing false reports on a monthly basis. Although she received well over $400 in total overpayments, she did not receive more than $400 as the result of any single false report. She argues that the Legislature did not intend that her monthly overpayments be aggregated to render her liable for felony treatment. Her attack has three prongs. The first is that the Legislature's failure to use the plural terms in the statutory phrase "false statement or representation or . . . impersonation or other fraudulent device" reflects, in her view, its intent that aid obtained or retained must be done so by means of a single false statement or a single representation or by a single fraudulent device. If the amount of benefits falsely obtained by that single false statement is more than $400, so the argument goes, the crime is a felony and if not, a misdemeanor. ▪ But this construction ignores the statutory

provision that, as used in the Welfare and Institutions Code, "[t]he singular number includes the plural, and the plural number includes the singular." (§ 13.) This general provision governs the construction of that code unless the context otherwise requires. (§ 5.) Nothing in the context of section 10980 otherwise requires. Consequently, section 10980 must be read as prohibiting any person from illegally obtaining aid "by means of false statements or representations or by impersonations or other fraudulent devices."

The second is that the Legislature's purpose in enacting the 1984 amendments was not to increase the punishment for welfare fraud. Instead, defendant claims, its purpose was to improve the welfare system by establishing reasonable rate structures, providing for administrative efficiency in investigating and prosecuting fraud cases and consolidating penal provisions for welfare fraud. This contention is refuted by the very language of the amended statute which in fact did increase the punishment for welfare fraud. The Legislature obviously had multiple purposes when it enacted the 1984 amendments and one was to alter the punishment for welfare fraud. Indeed, it seems self-evident from the very fact that the prior statute governing punishment for welfare fraud has been amended that the Legislature intended to change the existing law. (*Eu* v. *Chacon* (1976) 16 Cal.3d 465, 470 [128 Cal.Rptr. 1, 546 P.2d 289]; see also *In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].)

The third prong in defendant's attack is the familiar rule of construction of penal statutes favoring defendants. ■ "When language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].) ■ Armed with this rule, defendant assaults her felony conviction by arguing that "[e]ven if one were to suppose that the Legislature might have intended the singular to mean the plural," the application of the rule prevents the court from adversely construing the statute to permit any aggregation of the overpayments. Once again we disagree. The rule only applies to an ambiguous statute which is subject to two reasonable but conflicting interpretations. As Witkin notes, "this 'doctrine of lenity' is only an aid to construction, and cannot be invoked at all unless the statute is ambiguous." (1 Witkin, *supra,* § 16, p. 20.) The Legislature specified that welfare fraud is an alternate felony when the "total amount" of falsely obtained aid is in excess of $400. (§ 10980, subd. (c)(2).) Under the circumstances the Legislature's choice of words can only be construed to mean that overpayments should be aggregated. (See *Piedmont Publishing Co.* v. *Rogers* (1961) 193 Cal.App.2d 171, 188 [14 Cal.Rptr. 133], defining "total.") ■ Reduced

to its skeletal form, the word "total" means "the sum of all parts" (Webster's New Internat. Dict. (2d ed. 1938) p. 2675) and hence denotes an aggregate amount.

This construction of the welfare fraud statute is consistent with the judicial interpretation of analogous language in the theft statute. The false pretense portion of the theft statute is also framed in the singular term and has been definitively interpreted as permitting the aggregation of overpayments when the serial misrepresentations are made pursuant to a single scheme. The relevant portion of the theft statute provides, as it has since 1927, that "[e]very person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, . . . is guilty of theft." (Pen. Code, § 484, subd. (a); Stats. 1927, ch. 619, § 1, p. 1046.) The issue of aggregation under this statute is hardly a new one and its history is instructive. As Witkin notes, "[o]ne of the constantly recurring issues in theft prosecutions is whether successive acts of theft constitute separate crimes or a single crime." (1 Witkin, *supra*, § 374, p. 348.) This problem, Witkin goes on to observe, "became acute, however, in a series of cases involving false representations to obtain state or county welfare aid. The acts normally commenced with initial misrepresentations pursuant to an overall plan or intent, but the individual relief payments were rarely over [the amount necessary to constitute a felony]." (1 Witkin, *supra*, § 375, p. 349.) The problem was exacerbated in *People* v. *Serna* (1941) 43 Cal.App.2d 106 [110 P.2d 492]. There the defendant was charged with grand theft in unlawfully obtaining unemployment benefits for some six months. The *Serna* court concluded that aggregation was improper and held that only a series of petty thefts had been committed. The court conceded that his "original application furnished defendant an *entré* or a basis for negotiating for each of the payments subsequently received." (*Id.,* at p. 108.) Nevertheless, despite the fact that "his fraudulent statement in his application for relief tainted all of his transactions (Pen. Code, sec. 484) it did not have the effect of amalgamating all of them into a unified deed." (*Ibid*.) This followed, the *Serna* court reasoned, because defendant was required to endorse each warrant with a certification that he had correctly reported his status to the state and therefore was never in a position at any one time to appropriate more than one payment. (*Id.,* at p. 109.) But in *People* v. *Lima* (1954) 127 Cal.App.2d 29 [273 P.2d 268], we held directly contrary to the holding in the *Serna* case. In our view, the distinction between one offense or several turned on whether the evidence disclosed one general intent or separate, distinct ones. Thereafter, in *Dawson* v. *Superior Court* (1956) 138 Cal.App.2d 685, 689 [292 P.2d 574], the court felt "constrained to follow the later rule of *People* v. *Lima* rather than the earlier rule of *People* v. *Serna*." The *Dawson* court was considering a situation in all important aspects identical to this one. It concluded that the improperly

obtained sums should be aggregated and that the crime was grand theft rather than petty theft. (*Ibid.*) The issue was finally resolved by the Supreme Court in *People* v. *Bailey* (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39], at pages 519 and 520. There the defendant was convicted of grand theft after she illegally obtained over $3,000 in welfare payments over a period of a year and half. At the time of this offense the crime of grand theft was committed when the money taken exceeded $200. The issue on appeal was "whether she was guilty of grand theft or of a series of petty thefts since it appears that she obtained a number of payments, each less than $200 but aggregating more than that sum." (*Id.,* at p. 518.) ■■■ The high court held that the test whether a series of acts constitutes one offense or a series of offenses depends upon whether the evidence discloses one general intent or separate and distinct intents. The issue depends upon the facts of each case, but the primary concern is whether the evidence establishes that the acts were pursuant to one intention, one general impulse, and one plan. In so holding the court expressly overruled *Serna,* and approved the *Lima* line of cases "involving theft by false pretenses [which] held that where as part of a single plan a defendant makes false representations and receives various sums from the victim the receipts may be cumulated to constitute but one offense of grand theft." (*Id.,* at p. 518.) The high court consequently affirmed the conviction for grand theft based upon multiple fraudulent receipts of welfare benefits.

The false pretense portion of the theft statute and the welfare fraud provision in subdivision (c) of section 10980, are parallel. Both condemn, in the singular form, obtaining money or aid by a false "representation." (§ 10980, subd. (c); Pen. Code, § 484, subd. (a).) Defendant advances no persuasive reason why these parallel statutes should not be interpreted in the same fashion. Given this judicial construction of a parallel statute, we apply the same standard here. We hold therefore that the test to determine if the total amount of aid obtained in violation of subdivision (c) of section 10980 exceeded $400 is whether the aggregate amount was obtained "pursuant to one intention, one general impulse, and one plan." (*People* v. *Bailey, supra,* 55 Cal.2d at p. 519.)[4] In this case it is readily inferable, and

---

[4] This construction is also consistent with the Legislature's treatment of other kinds of continuous theft crimes. For example, under Penal Code sections 484g and 484h it is a crime to use, or for a merchant to knowingly accept, an access card (which includes credit cards) without the consent of the cardholder. Where the value of all money, goods or services taken exceeds $400 in any consecutive six-month period the offense constitutes a felony. Similarly, where theft is committed by a servant, agent or employee from a principal or employer, and the value of the property stolen exceeds $400 in any consecutive 12-month period then the offense is grand theft. (Pen. Code, § 487.) It thus appears that for some continuous theft cases the Legislature intended that the offense be treated as a felony or misdemeanor based upon the total or cumulative value of the property wrongfully taken. By specifying that the demarcation in welfare fraud should be based upon the "total amount" of the wrongfully obtained

the trial court expressly found, that defendant acted pursuant to a single intention and one general impulse. Her felony conviction under section 10980, subdivision (c)(2) was thus proper.

Defendant asserts there are four possible dispositions for persons such as herself: (1) A person with financial means can make restitution prior to prosecution (§ 11483); (2) charges may be dismissed pursuant to *People* v. *Sims* (1982) 32 Cal.3d 468 [186 Cal.Rptr. 77, 651 P.2d 321]; (3) the offense may be treated as a misdemeanor either through plea bargaining or trial court discretion; and (4) the defendant may be convicted of multiple felonies such as welfare fraud and perjury. Defendant asserts that the Legislature did not intend that this much discretion be accorded in the application of the penal provisions of the law. To the contrary, we find clear evidence that the Legislature did intend to create broad discretion.

With respect to restitution it is first necessary to note that even complete and immediate restitution is not a bar to prosecution. (*People* v. *McGee* (1977) 19 Cal.3d 948, 964 [140 Cal.Rptr. 657, 568 P.2d 382].) By enacting the restitution provisions of section 11483 the Legislature intended to give those accused of welfare fraud an early opportunity to respond to a request for restitution and thereby possibly obtain favorable consideration from prosecuting authorities. (*Ibid.*) The prosecution is required to consider the recipient's response on a case-by-case basis, but may nonetheless decide that prosecution is warranted despite the response. (*People* v. *Harper* (1981) 121 Cal.App.3d 283, 288-289 [175 Cal.Rptr. 146].) After the decision in *McGee,* the Legislature amended the restitution provisions of the law to require that restitution be requested before prosecution only with respect to persons who failed to report not more than $2,000 in income and resources, or the presence of additional persons in the household. (Stats. 1979, ch. 1170, § 12, p. 4566; Stats. 1979, ch. 1171, § 1, p. 4568. See *People* v. *Woods* (1986) 177 Cal.App.3d 327, 331 [222 Cal.Rptr. 868].) The fact that the Legislature limited but did not abrogate the restitution provisions of the law after the *McGee* interpretation is a clear indication that it intended to adhere to that interpretation in the circumstances where restitution is required.

We turn next to dismissals. A dismissal pursuant to *People* v. *Sims, supra,* 32 Cal.3d 468, is not a legislative creation. The *Sims* court applied the well known legal doctrine of collateral estoppel in a new context. The court held that a welfare recipient cannot be prosecuted for fraud or perjury where it has previously been determined in an administrative proceeding

---

aid, the Legislature has once more expressed its intent that the cumulative amount is the critical factor in fixing the offender's punishment.

that she is innocent. (32 Cal.3d at pp. 489-490.) Criminal prosecution is prohibited because the prior adjudication, through the doctrine of collateral estoppel, has established the recipient's factual innocence. Although the decision in *Sims* was not constitutionally based, the Legislature has not attempted to abrogate it. Unless it does so we are required to adhere to it. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

We next consider the reduction of the offense to a misdemeanor. The crime of welfare fraud may be treated as a misdemeanor either through plea bargaining or through trial court discretion. ■■■ Plea bargaining is a well-established and judicially approved practice. (See *People* v. *West* (1970) 3 Cal.3d 595, 605-608 [91 Cal.Rptr. 385, 477 P.2d 409].) Plea bargaining has been limited with respect to certain types of charges, known as "serious felonies." (Pen. Code, § 1192.7.) However, welfare fraud is not one of those offenses. (*Ibid.*) Plea bargaining thus remains an option in such cases.[5] ■■■ That the Legislature intended to vest trial courts with discretion to treat welfare fraud as a misdemeanor or felony is conclusively established by the fact that it used the "wobbler" device in providing for punishment for such offenses. (Pen. Code, § 17.)

■■■ Finally, that the Legislature intended that a person who commits welfare fraud may be convicted for perjurious statements made to obtain such aid was established in *People* v. *Jenkins* (1980) 28 Cal.3d 494 [170 Cal.Rptr. 1, 620 P.2d 587], at page 508. Of course, a recipient cannot be punished for both offenses where they are committed with an indivisible intent. (Pen. Code, § 654.) But the provisions of sections 11483 and 10980 do not abrogate the possibility of perjury prosecution in such instances. (*Ibid.*)

■■■ For these reasons we reject defendant's contention that the Legislature did not intend that persons such as herself be subject to conviction for felony offenses. During a 10-month period defendant consistently under-reported her earned income in order to obtain benefits to which she was not entitled. The total amount of wrongfully obtained benefits was well in excess of $400. Defendant's conduct comes within the provisions of section 10980, subdivision (c)(2) and she was properly convicted of felony welfare fraud.

---

[5] This would appear to be especially true in cases where a request for restitution is required prior to criminal proceedings. It is inconceivable the Legislature would require the prosecution to make a request for restitution and to consider the recipient's response without also allowing for prosecutorial discretion in the appropriate disposition of the case.

## II

Defendant contends that section 10980, subdivision (c)(2) is constitutionally void for vagueness and, in view of the manner in which assistance payments are calculated, is so illogical as to shock the conscience. This is so, argues defendant, because it is impossible for a recipient to know when her false statements have resulted in overpayments over $400.

In *Burg* v. *Municipal Court* (1983) 35 Cal.3d 257 [198 Cal.Rptr. 145, 673 P.2d 732], the Supreme Court considered the constitutionality of Vehicle Code section 23152, subdivision (b). In that subdivision the Legislature altered the former practice of raising a presumption a driver is under the influence of alcohol with a .10 percent blood-alcohol level, and simply made it unlawful to drive a vehicle with such a blood-alcohol level. Predictably, the contention was made that the act was impermissibly vague because it is impossible for a driver to know precisely when his blood-alcohol level reaches .10 percent. The high court noted that a statute is sufficiently definite where it provides (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt. (35 Cal.3d at p. 269.) The second standard was met because the statute could not have been more precise for law enforcement. (*Id.,* at p. 270.) The first standard was met because due process requires only "fair notice" and not "actual notice." (*Id.,* at p. 270, fn. 17.) The court found it difficult to sympathize with an "unsuspecting" defendant who did not know if he could take one more sip without crossing the line. (*Id.,* at p. 271.) A person who drinks a substantial amount of alcohol in a short period of time has clear notice that he is in jeopardy of violating the statute, and this constitutes fair notice essential to the validity of the statute. (*Id.,* at pp. 271-272.)

Here, as in *Burg,* the statutory demarcation line provides a very precise standard for law enforcement. Likewise, that line provides sufficiently fair warning to potential lawbreakers. The notice provided must be such that prosecution does not "trap the innocent" without "fair warning." (*Ibid.*) A person who engages in a pattern of false reporting in order to fraudulently obtain public assistance benefits is neither "innocent" nor without "fair warning" that her behavior may rise to a felony level. (*Ibid.*)

In any event, the Supreme Court has established that a statute will not be held void for vagueness at the behest of a defendant whose conduct falls clearly within its bounds. (*Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 492 [134 Cal.Rptr. 630, 556 P.2d 1081].) A statute is not void simply because there may be difficulty in determining whether some marginal or hypothetical act is covered by its language. (*Ibid.*) Here

defendant fraudulently failed to report income of $1,759.03, which resulted in the receipt of more than $2,900 in benefits to which she was not entitled. Defendant notes that the county claims overpayments of about one dollar for every 60 cents she failed to report, and argues that this result is illogical and renders the statute void. However, even if defendant were overpaid only 25 cents for every dollar she failed to report, she would still have exceeded the statutory demarcation line. Defendant is thus not in a position to claim that she was not given fair notice by the statute that her conduct could lead to a felony conviction.

 Defendant notes the variation in possible dispositions recounted above (restitution, dismissal by collateral estoppel, misdemeanor conviction, and felony conviction) and asserts that this variety of dispositions violates the equal protection rights of those convicted of felonies. We reject this contention.

With respect to the requirement that restitution be sought, we have already noted that restitution does not bar prosecution. The requirement of a request for restitution merely gives certain recipients an opportunity to respond and thereby possibly obtain favorable consideration in the exercise of prosecutorial discretion. (*People* v. *Harper, supra,* 121 Cal.App.3d at pp. 288-289.) In this respect all persons who are similarly situated with respect to the purposes of the law are treated identically. (See *People* v. *Tallagua* (1985) 174 Cal.App.3d 145, 152 [219 Cal.Rptr. 754].) There is no constitutional vice in the fact that the prosecution is left with discretion in determining how to proceed after considering the recipient's response. (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 297 [124 Cal.Rptr. 204, 540 P.2d 44].) An equal protection violation can arise from the exercise of prosecutorial discretion only where the defendant shows that he or she has been deliberately singled out for prosecution on the basis of some invidious criterion and that the prosecution would not have been pursued except for the discriminatory design of the prosecuting authorities. (*Id.,* at p. 298.) Equal protection guarantees are not violated simply because one person is prosecuted while another is not for the same act. (*Id.,* at p. 297. See also *People* v. *Superior Court* (*Hartway*) (1977) 19 Cal.3d 338, 348-349 [138 Cal.Rptr. 66, 562 P.2d 1315].)

 A dismissal pursuant to *People* v. *Sims, supra,* 32 Cal.3d 468, cannot violate the equal protection rights of those who are convicted. As we have noted above, the basis for such a dismissal is that the accused's factual innocence has already been adjudicated in a prior administrative proceeding. To be sure, some who are guilty might escape conviction in that manner. But the constitution does not guarantee either a correct decision or

consistency in decisions. (*Worcester County Trust Co.* v. *Riley* (1937) 302 U.S. 292, 299 [82 L.Ed. 268, 275, 58 S.Ct. 185].)

The fact that some defendants may plea bargain for a misdemeanor conviction does not implicate a particular defendant's equal protection rights. Plea bargaining is a matter entrusted to the discretion of the prosecutor. (*People* v. *Orin* (1975) 13 Cal.3d 937, 943 [120 Cal.Rptr. 65, 533 P.2d 193].) It is subject to the approval of the trial court. (*Ibid.*) It is not constitutionally objectionable (*People* v. *West, supra,* 3 Cal.3d at p. 609), unless, of course, the defendant can establish that prosecution in her case was the result of invidious discrimination within the meaning of *Murgia* v. *Municipal Court, supra,* 15 Cal.3d at pages 297-298.

Finally, it has been held that the power of a trial court to treat an offense as a misdemeanor or as a felony pursuant to Penal Code section 17 does not violate principles of due process or of equal protection. (*In re Watkins* (1966) 64 Cal.2d 866, 869-870 [51 Cal.Rptr. 917, 415 P.2d 805]; *In re Rosencrantz* (1931) 211 Cal. 749, 750-751 [297 P. 15]; *People* v. *Widener* (1963) 220 Cal.App.2d 826, 830 [34 Cal.Rptr. 130].)

For these reasons we reject defendant's constitutional attacks on her conviction.

The judgment (order of probation) is affirmed.

Puglia, P. J., and Blease, J., concurred.