*Supp. 4 Opinion
OSBORNE, J.
The City of Simi Valley (the City) notified defendant Arthur Fishel that he had violated certain specified city ordinances, requested his voluntary compliance, and warned him that it would enforce the ordinances. Instead of complying, Fishel filed a complaint in the United States District Court challenging the constitutionality of the ordinances, and seeking to restrain any state court prosecution. The City filed a misdemeanor complaint in the Ventura County Municipal Court charging him with violating the ordinances.
Upon motion by the defendant, the trial court dismissed the case against defendant. The People appealed from the judgment of dismissal. We reverse.
This case involves the interplay between two legal principles, Under federal law, there is a strong policy to permit state courts to try state cases free from interference by federal courts. (Younger v. Harris (1970) 401 U.S. 37 [27 L.Ed.2d 669, 91 S.Ct. 746].) A defendant may raise a claim of intentional and purposeful invidious discrimination as a ground for dismissal of a criminal prosecution. (Murgia v. Municipal Court (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44].)
The relevant chronology of this case is simple.
March 3,1989: The City sent Mr. Fishel a letter advising him of violations of certain ordinances, and seeking his voluntary compliance within 15 days. (The 15 days were later characterized as a “grace period” and would expire March 18.) A similar letter was sent to him on March 6.
March 7,1989: The local newspaper reported that Fishel’s attorney said he would sue the City if the ordinances were enforced.
March 13 and 15, 1989: Letters from Fishel’s attorney made it clear that Fishel had no intention of voluntarily complying with the City’s ordinances.[1]
March 15, 1989: An attorney for the City advised Fishel’s attorney that on Monday (Mar. 20, 1989), the City intended to issue citations for the ordinance violations.
*Supp. 5 March 17, 1989: Fishel filed a complaint in the United States District Court for the Central District of California challenging the constitutionality of the ordinances,* [2] and requested a temporary restraining order against any prosecution in the state court.
March 20, 1989: The City prepared a misdemeanor complaint alleging ordinance violations, and filed it on March 21, 1989.[3]
March 22, 1989: The United States District Court denied Fishel’s application for a temporary restraining order, on the ground that the filing of the criminal complaint invoked the abstention doctrine explained in Younger v. Harris, supra, 401 U.S. 37. Later, the court granted the City’s motion to dismiss Fishel’s federal action.
In the municipal court, the defendant moved for dismissal of the misdemeanor complaint, under Murgia v. Municipal Court, supra, 15 Cal.3d 286. After a long hearing, the trial court granted the motion. Agreeing with defendant’s arguments, the judge concluded that “the charges were filed against the defendant before this grace period . . . occurred because of the fact that the defendant was seeking federal court relief’ and that such filing constituted intentional discrimination against the defendant based upon an invidious standard which violated the equal protection clause.[4]
*Supp. 6 “The elements of the defense of discriminatory enforcement were set forth in Murgia v. Municipal Court, supra. To establish the defense, the defendant must prove: (1) ‘that he has been deliberately singled out for prosecution on the basis of some invidious criterion;’ and (2) that ‘the prosecution would not have been pursued except for the discriminatory design of the prosecuting authorities.’ (15 Cal.3d at p. 298.)” (People v. Superior Court (Hartway) (1977) 19 Cal.3d 338, 348 [138 Cal.Rptr. 66, 562 P.2d 1315]; hereafter Hartway.)* ***[5]
Relying on a “grace period” during which the City solicited his voluntary compliance is of no avail to defendant. In fact, the grace period had expired for several of the counts at the time of filing the complaint, but the court dismissed those counts as well. Further, it was clear from Fishel’s actions, including letters from his attorney and the filing of the federal suit, that Fishel had no intention of complying within any grace period.
“There is no constitutional vice in the fact that the prosecution is left with discretion in determining how to proceed after considering the [alleged *Supp. 7 offender’s] response.” (People v. Camillo (1988) 198 Cal.App.3d 981, 997 [244 Cal.Rptr. 286].)[6]
The so-called grace period was of no legal significance as a bar to prosecution. Indeed, the import is directly contrary. It showed an intention by the City to require Fishel to cease the alleged violations before he or his attorney said or did anything about seeking federal relief.[7]
Defendant gains no benefit from the fact that he managed to file his federal action shortly before the criminal complaint was filed in the state court, In Younger v. Harris, supra, 401 U.S. 37, the Supreme Court expressed a strong policy against interfering with pending state criminal prosecutions, and stated that if such a suit were pending the federal court should defer and dismiss.
In Hicks v. Miranda (1975) 422 U.S. 332 [45 L.Ed.2d 223, 95 S.Ct. 2281], the Supreme Court held that the same rule applies where the federal action is filed first, then a state action is filed before any proceedings of substance on the merits have been taken in the federal court. In Hicks, Miranda had filed a federal action requesting a temporary restraining order; over six weeks later, a California state misdemeanor complaint was amended to add Miranda as a defendant. The Supreme Court of the United States ruled that the federal court should have dismissed the federal complaint.[8] In the present case, the complaint against defendant was filed two court days after defendant filed his federal action.
Four justices dissented from the Hicks holding requiring dismissal of the federal action. But the dissenters agreed that the state could not be required *Supp. 8 to refrain from actively prosecuting the criminal charges pending the outcome of the federal suit. (Hicks v. Miranda, supra, 422 U.S. at p. 356 [45 L.Ed.2d at p. 243, 95 S.Ct. at p.2295].)[9]
Upon filing of the state criminal suit in this case, as required by Younger v. Harris, supra, 401 U.S. 37, and Hicks v. Miranda, supra, 422 U.S. 332, the federal court denied relief and later dismissed the federal proceedings instituted by Fishel. So far as can be gleaned from the record, Fishel did not appeal. The City obviously had no reason to appeal.
The municipal court judge dismissed the criminal case because it was filed after the federal suit. The court’s order of dismissal, if upheld, would forever bar prosecution for the crimes alleged, and would preclude the People from reaching the merits of the case in either state or federal court.[10]
To reward Fishei’s filing of a federal suit with dismissal of the state criminal action would be to encourage a race to the courthouse which would, as stated by the Supreme Court of the United States in Hicks v. Miranda, supra, 422 U.S. at p. 350 [45 L.Ed.2d at pp. 239-240, 95 S.Ct. at p. 2292], trivialize the principles of Younger v. Harris, supra, 401 U.S. 36.
There was no causality. Fishel was not prosecuted because he filed an action in federal court. Before there was any discussion of filing in federal court, the City made it clear that he would be prosecuted because he violated the City’s ordinances if he did not voluntarily comply, and he did not comply. As noted by the People, the City did not undertake enforcement actions against Fishel in retaliation for Fishei’s seeking federal relief; rather, the uncontradicted facts show that Fishel threatened and filed legal action against the City for trying to enforce its ordinances.
*Supp. 9 If there was any discrimination, it was not invidious. As stated above, Fishel was prosecuted because he did not voluntarily comply with the City’s ordinances, and not because he filed a federal suit. That is not invidious. At most, the federal suit may have affected the timing of the filing of the state criminal complaint. That is not enough. Even if the filing of the federal complaint were considered to be causative, that basis is not invidious. Younger v. Harris, supra, 401 U.S. 37, Hicks v. Miranda, supra, 422 U.S. 332, and Doran v. Salem Inn, Inc. (1975) 422 U.S. 922 [45 L.Ed.2d 648, 95 S.Ct. 2561] recognize the propriety of filing in the state court. The actions which the United States Supreme Court permitted in Hicks and Doran cannot reasonably be considered to be an unconstitutional denial of equal protection of the laws. (Accord: Corpus Christi, etc. v. Tex. Dept. of Human Resources (S.D.Tex. 1979) 481 F.Supp. 1101, 1107, and Sovereign News Co. v. Falke (N.D.Ohio 1977) 448 F.Supp. 306, 333, fn. 120.)
There was no invidious discrimination. Defendant was not denied equal protection of the laws. The order of dismissal is reversed and the case is remanded to the municipal court for further proceedings not inconsistent with this opinion.
Lane, P. J., and Bradley, J., concurred.

The March 13, 1989, letter argued that the ordinances were unconstitutional, and concluded: “[I]f the city wants an attempt at informal resolution without the necessity for a lawsuit (and thereby avoid having to pay attorney’s fees under 42 U.S.C. sec. 1988), then the *Supp. 5 city must defer enforcement action and you must so advise me of such deferment. Otherwise, my client will commence litigation this week.”
The March 15, 1989, letter concluded: “. . . I can only conclude that on Monday, March 20, 1989, the city will pursue enforcement action against Mr. Fishel, action which includes impositions of fines, seizure of newsracks and filing of criminal charges.
“To avoid the filing of a lawsuit this week and a request for immediate injunctive relief, advise me no later than Thursday, 1:30 p.m., that the City will not pursue enforcement action against Mr. Fishel next week.”

In Fishel v. City of Simi Valley, No. 106030, defendant requested the Ventura County Superior Court to enjoin enforcement of the two ordinances and to enjoin further prosecution of this municipal court action, on the grounds that the ordinances were invalid. The superior court denied a preliminary injunction. Defendant appealed the superior court ruling, but later abandoned his appeal. (Ct. App. No. B043950.) This present appeal does not involve the constitutionality of the ordinances.

Defendant was charged with several counts of having sidewalk newsracks that were in violation of two Simi Valley Municipal Code sections: section 7-1.269 regarding encroachment permits, and section 5-29.01 regarding blinder racks. The latter ordinance provides: “No material which is harmful to minors, as defined in Section 313 of the Penal Code of the State, shall be displayed in a public place, other than a public place from which minors are excluded, unless blinder racks are placed in front of the material so that the lower two-thirds (2/3) of the material is not exposed to view.”

The standard of review of the facts is the substantial evidence test. Quoting from 9 Witkin, California Procedure (3d ed. 1985) Appeal, section 282, page 294, defendant contends: “All *Supp. 6 of the evidence most favorable to the respondent must be accepted as true, and [the] unfavorable discarded as not having sufficient verity to be accepted by the trier of fact." To the contrary, to determine whether supporting evidence is substantial, i.e., is reasonable, credible, and of solid value, an appellate court must consider the evidence in the light of the whole record. (Rivard v. Board of Pension Commissioners (1985) 164 Cal.App.3d 405 [210 Cal.Rptr. 509].)
In this case, the difference is academic, because the determinative facts are undisputed.

“[T]here must be somewhat more of a connection to establish the defense than that a prosecutor is improperly biased. The bias must be operating in the instant prosecution as an important factor in order to support a finding of causality. On the other hand, the defendant need not establish that the only reason for the prosecution is an improper one. Typically, there will also be evidence of the defendant’s wrongdoing, which the prosecution will argue is its basis for pursuing the proceedings (cf. Hartway, supra, 19 Cal.3d 338, 351). In short, the prosecutorial bias must be an important cause of the proceedings, but not the only one, in order to make out the required causal connection (Murgia, supra, 15 Cal.3d at p. 298, fn. 6).” (People v. Smith (1984) 155 Cal.App.3d 1103, 1134 [203 Cal.Rptr. 196].)
The Smith court’s phrasing the requirement in terms of being “an important cause” can lead to misunderstanding. To constitute the defense, the invidious discrimination must be a necessary cause of the prosecution, but it need not be a sufficient cause, that is, it need not be the only cause, of prosecution. In other words, a defendant need not show that because of the discrimination, he would have been prosecuted regardless of all other facts, for example, in the absence of any evidence of wrongdoing. But he must show that regardless of all other facts, including, for example, the presence of evidence of guilt, he would not have been prosecuted but for the invidious discrimination.
Thus, in Wayte v. United States (1985) 470 U.S. 598, 610 [84 L.Ed.2d 547, 558, 105 S.Ct. 1524, 1532], Wayte was identified as not having registered for Selective Service from protest letters he had sent. The United States Supreme Court stated: “In the present case, petitioner has not shown that the Government prosecuted him because of his protest activities. Absent such a showing, his claim of selective prosecution fails.” (Italics in original.)

Compare the Government’s “beg” policy upheld in Wayte v. United States, supra, 470 U.S. 598 [84 L.Ed.2d 547, 105 S.Ct. 1524]. Young men identified as not having registered for Selective Service were sent letters urging them to register. The government prosecuted only those violators who still failed to comply. The analogy to the present case is obvious.

Defendant’s claim that he has somehow been deprived of his constitutional rights by not receiving all of the grace period to comply voluntarily is suspect for another reason. During a discovery hearing before Judge Dobroth on June 2, 1989, defendant’s attorney stated that defendant still had not complied with the encroachment permit ordinance and asserted that it was financially impossible for defendant to obtain an encroachment permit. Even a year later, on April 2, 1990, in the Murgia motion hearing before Judge Gutierrez, it was stated that defendant’s racks were still present without an encroachment permit.

“In essence, Hicks created ... a reverse removal power: a power to remove a case from the federal court to the state court. After a federal anticipatory suit is filed, the district attorney can initiate a criminal prosecution against the aggrieved citizen and by that action abort the federal suit and remit the citizen to adjudicating his claim as a defense in a criminal prosecution in the state court.” Fiss, Dombrowski (1977) 86 Yale L.J. 1103, 1135-1136, italics in original.

There are some exceptional circumstances in which a federal court may enjoin a state prosecution. The federal judge did not find any of those exceptional circumstances in Fishei’s case. The municipal court judge did not purport to find any of those exceptional circumstances existed, and the defendant has not contended that any did exist.
The dissenters in Hicks might argue about whether a federal court should be required to dismiss upon filing of a state court complaint under the circumstances of this case. That is not in issue. In this case, the federal court did dismiss, and neither the municipal court nor this court can review the propriety of that action. Further, even if the federal court had not dismissed, it is clear that the state court prosecution would not have been stayed. See the discussion of Hicks above.

Defendant argues: “In a Murgia motion, the state court is asked to do exactly what Younger predicts state courts will do—protect the defendant’s federal (and state) rights. Among those rights if the right to petition for redress of grievances without suffering a criminal prosecution in which the petitioning played an important factor in the decision to prosecute.”
But Younger expected the state courts to protect the defendant’s rights by deciding the issues presented to the federal court (e.g., constitutionality of the ordinances) and not by dismissing the state court case and denying a forum for the decision.