**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shahram DAVOUDI, Defendant–Appellant.**

**No. 98–50235.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1999.

Decided April 14, 1999.

---

Gerald Serlin, Benedon & Serlin, Woodland Hills, California, for the defendant-appellant.

Lee S. Arian, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: GOODWIN, BRUNETTI and T.G. NELSON, Circuit Judges.

GOODWIN, Circuit Judge:

Davoudi appeals his conviction and sentence on three counts of violating 18 U.S.C. § 1014 for making false statements to federally insured banks. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We affirm the judgement on all issues but the calculation of restitution.

Davoudi overstated his income on loan applications to Home Savings of America ("HSA"), Guardian Savings and Loan, and Downey Savings and Loan Association

("Downey"). Each bank relied on the false statements in making loans to him. Davoudi defaulted on each of the loans. The district court found that Guardian had suffered no loss; that HSA had suffered a loss of $137,500; and that Downey had suffered a loss of $66,348.

The district court calculated Davoudi's offense level under the Sentencing Guidelines to be 15: 6 for the base crime (§ 2F1.1(a)), 7 for losses totaling $120,000–$200,000 (§ 2F1.1(b)(1)(H)),[1] and 2 for multiple victims (§ 2F1.1(b)(2)). With a criminal history category of I, the Guidelines sentencing range was 18–24 months. The court sentenced Davoudi to 18 months in prison and, after considering Davoudi's financial condition, ordered him to pay $15,000 in restitution to HSA and $10,000 to Downey under 18 U.S.C. § 3663. As a resident alien from Iran, Davoudi also faces the prospect of deportation upon release from incarceration.

Davoudi first challenges the sufficiency of the evidence with regard to Downey's federally insured status.

## I. Date of Fraudulent Statements Under 18 U.S.C. § 1014

■ Davoudi argues that the government did not provide sufficient proof at trial that Downey was federally insured at the time Davoudi made false statements to Downey. *Cf.* 18 U.S.C. § 1014 (element of crime is bank's federally insured status); *United States v. Allen*, 88 F.3d 765, 768–770 (9th Cir.1996) (reversing § 1014 convictions because government failed to show that banks were federally insured when false statements were made), *cert. denied*, 520 U.S. 1202, 117 S.Ct. 1565, 137 L.Ed.2d 711 (1997). Davoudi's argument fails on the facts.

In reviewing the sufficiency of the prosecution's case, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential ele-

ments of the crime beyond a reasonable doubt. *See id.* at 768. The parties agree that Downey was not federally insured until August 9, 1989. Davoudi claims that he made his false statements in July 1989 when he completed the loan application. However, at trial Davoudi stated unambiguously that he signed the application on November 17, 1989 after reviewing the documents for their truth. For purposes of § 1014, the false statements were made both when initially provided to the bank and when reaffirmed through a signature. *See United States v. Knott*, 928 F.2d 97, 99 (4th Cir.1991) (previously provided false statements dated from signature on loan forms for purposes of § 1014 statute of limitations), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). Thus, a rational trier of fact could have found that Davoudi made the false statements to Downey in November after the bank was federally insured.

## II. The District Court's Exercise of Its Discretion Not to Depart Downward

■ Davoudi next argues that his custodial sentence should be remanded for reconsideration because the district judge believed he did not have the legal discretion to depart downward because of Davoudi's status as a deportable alien. This argument is contradicted by the record.

■ This court may not review a district court's discretionary decision refusing to depart from the Sentencing Guidelines. *See United States v. Tucker*, 133 F.3d 1208, 1214 (9th Cir.1998). However, if the district court indicates that it believed that it did not have discretion to depart from the guidelines, this court reviews that determination de novo. *Id.*

■ Davoudi correctly notes that the district court had the legal discretion to depart downward because deportable

---

1. We note that the losses calculated by the district judge actually totaled $203,848 supporting a Guidelines offense level of 16. The

government has not challenged the sentence on this ground.

aliens may be unable to take advantage of the up to six months of home confinement authorized by 18 U.S.C. § 3624(c). *See United States v. Charry Cubillos,* 91 F.3d 1342, 1344 (9th Cir.1996). A downward departure may be granted on this basis only if " '[the factor] is sufficient to take the case out of the Guideline's heartland' " and while " 'bear[ing] in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be "highly infrequent".' " *Id.* at 1345 (quoting *Koon v. United States,* 518 U.S. 81, 96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)).

Davoudi misinterprets our case law, however, when he asserts that de novo review applies because the district court indicated that it did not have the discretion to depart. Davoudi relies primarily on the district court's failure to specifically address his alien status as a basis for departure in its final sentencing decision. But we have clearly stated that "[t]he court's silence regarding authority to depart is not sufficient to indicate that the court believed it lacked power to depart." *United States v. Garcia–Garcia,* 927 F.2d 489, 491 (9th Cir.1991). Davoudi argues that the court may have believed it lacked discretion because it requested case law on departure based on § 3624(c), which Davoudi failed to provide. Asking counsel for citations does not establish a failure to exercise discretion. The court ' repeatedly asked defense counsel how Davoudi's status as a deportable alien brought his case "out of the heartland of cases"-the very inquiry demanded by *Charry Cubillos* and *Koon.* The court appears to have concluded, not that Davoudi was ineligible for downward departure as a deportable alien, but that even as a deportable alien Davoudi was "in the heartland of cases." The court properly exercised its discretion not to depart downward.

### III. Valuation of Property Recovered By Victims For Purposes of Restitution and Sentencing

█ In April 1992, Davoudi obtained a $318,700 mortgage from HSA to refinance property he owned in Bel Air. Davoudi defaulted on the loan almost immediately, and the principal outstanding on the loan was $317,500. The bank eventually foreclosed on the Bel Air property. In calculating HSA's loss, the district court had to credit Davoudi for the value of the recovered property. For purposes of both custodial sentencing and restitution, the district court valued the property at $180,000, the amount for which Davoudi sold the property in June 1996 to a third party on behalf of HSA's servicing agent. There is evidence that the property had a market value above $180,000 at times between 1991 and 1996. For purposes of restitution, but not for custodial sentencing, the district court's valuation was incorrect.

█ While the district court's application of the Sentencing Guidelines to the facts is reviewed for an abuse of discretion, the district court's interpretation of the Guidelines is reviewed as an issue of law. *See United States v. Barnes,* 125 F.3d 1287, 1290 (9th Cir.1997). The remaining issues in this appeal-the district court's valuation methodology and treatment of interest and late fees-require legal interpretation of the Guidelines and are thus reviewed *de novo.* Our standard of review for these issues is the same under 18 U.S.C. § 3663. *See, e.g., United States v. Smith,* 944 F.2d 618, 624 (9th Cir.1991), *cert. denied,* 503 U.S. 951, 112 S.Ct. 1515, 117 L.Ed.2d 651 (1992).

The district court is authorized by 18 U.S.C. § 3663(b)(1)(B)(ii) to order restitution in the amount of the victim's loss "less the value (as of the date the property is returned) of any part of the property that is returned." This court has held that this plain language requires property to be valued as of the date the victim took control of the property. *See Smith,* 944 F.2d at 624–625. "As of that date, the [secured lender] had the power to dispose of the property and receive compensation." *Id.* at 625. *Accord United States v. Catherine,* 55 F.3d 1462, 1465 (9th Cir.1995); *United States v. Hutchison,* 22 F.3d 846,

856 (9th Cir.1993) ("In *Smith*, .... [w]e rejected the district court's valuation of the property as of the date on which it was sold."). Under *Smith* and its progeny the district court should have based the restitution to HSA on the fair market value of the Bel Air property at the time HSA "had the power to dispose of the property" as it wished. Because it is possible that the proper valuation of the property might lead the district court to conclude that HSA suffered a smaller loss or no loss whatsoever, the restitution portion of the sentence is remanded for reconsideration.

■ Smith and its progeny do not control the valuation of the property for purposes of Guidelines sentencing, however, because the loss calculations under § 3663 and USSG § 2F1.1 are distinct. *See Catherine*, 55 F.3d at 1464–65. Application note 8(b) to USSG § 2F1.1 specifies that "[i]n fraudulent loan application cases .... the loss is the amount of the loan not repaid *at the time the offense is discovered*, reduced by the amount the lending institution has recovered (or can expect to recover) from any assets pledged to secure the loan." (Emphasis added.) Davoudi argues that this language requires the recovered assets to be valued at the time the offense was discovered. Davoudi's interpretation of the commentary makes little sense. By its location in the commentary, the phrase "at the time the offense is discovered" clearly qualifies the "amount of the loan not repaid," not the "amount ... recovered." While the principal unpaid at the time the offense is discovered is a sensible measure of culpability, *see, e.g., United States v. Mummert*, 34 F.3d 201, 204 (3d Cir.1994) ("A defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by

offering to make restitution after being caught."), there is no reason to value the recovered assets as of the time the offense is discovered.

Instead, the commentary's plain language supports the district court's use of the actual sale price. The commentary language "*has* recovered (or can expect to recover) ... *from* any assets pledged" directs the court to focus not on the market value of the property but on the actual sale proceeds. Even if the property has not been sold, the tense of the parenthetical requires the property to be valued at the time of sentencing. If the bank suffers losses after the offense is discovered because of a falling market or even through its own improvident management, those consequential losses can be attributed to the defendant's conduct for purposes of Guidelines sentencing. The district court did not err in computing HSA's loss under the Sentencing Guidelines.

## IV. Treatment of Interest Paid for Purposes of Sentencing and Restitution

■ Davoudi obtained a $332,500 mortgage from Downey on another property. He repaid $6152 in principal and the bank eventually recovered $260,000 on the sale of that property. From these figures, the district court concluded that Downey suffered a loss of $66,348. The district court did not consider interest either paid by Davoudi or accrued interest still owed to Downey. Davoudi argues that for purposes of both custodial sentencing and restitution the district court should have offset Downey's loss by the over $100,000 in interest he paid to Downey before defaulting.[2] Davoudi is again mistaken.

**2.** Davoudi also challenges the district court's failure to deduct the $3285 he paid in late fees from Downey's loss. Because deducting $3285 from Downey's $66,348 loss would not affect his sentence, any error in the treatment of payments credited to late fees is clearly harmless. We therefore decline to address the proper treatment of late fees in calculating a victim creditor's actual loss. *But see*

*United States v. Nolan*, 136 F.3d 265, 273 (2d Cir.) (USSG § 2F1.1 loss includes principal, unpaid interest, and penalties on a note), *cert. denied sub nom. Mezzetta v. United States*, —— U.S. ——, 118 S.Ct. 2307, 141 L.Ed.2d 165 (1998); *United States v. Goodchild*, 25 F.3d 55, 66 (1st Cir.1994) (USSG § 2F1.1 loss includes interest and late fees due as a result of fraudulent use of credit cards.).

 In *United States v. Allen,* 88 F.3d 765, 770–71 (9th Cir.1996), *cert. denied,* 520 U.S. 1202, 117 S.Ct. 1565, 137 L.Ed.2d 711 (1997), this court rejected the claim that for purposes of Guidelines sentencing, interest the defendant paid on the loan should be subtracted from the principal lost. Banks extend loans for the sole purpose of earning interest income; allowing Davoudi to subtract interest payments from the principal the bank lost would treat the mortgage as an interest-free loan. In fact, unpaid interest in fraudulent loan cases is considered an actual loss to the victims. District Courts may choose to include unpaid interest still due on the loan in the calculation of the victim's actual loss.[3] Interest paid by the defendant can not, thus, reduce the amount of principal lost by the victim; it can only reduce the amount of interest outstanding on the loan.

The treatment of interest should be identical in the loss calculation under § 3663. Because the contractual interest on a loan is not speculative and is the raison d'etre for the loan, the district court may also choose to include interest still due on the loan in the loss calculation for purposes of restitution. The expected interest that remains unpaid is an actual loss to the lender. Interest paid is irrelevant except that it reduces the total outstanding interest.

The district court correctly followed our precedent in its treatment of the interest on the HSA loan.

## V. Conclusion

We remand only the portion of Davoudi's sentence ordering restitution to HSA. The property recovered by HSA should be valued at the time HSA "had the power to dispose of the property" as it wished.

Conviction AFFIRMED, sentence VACATED and REMANDED for further proceedings.

---

**3.** A district court may choose to include interest due at the time the offense is discovered in the loss calculation despite the statement in USSG § 2F1.1, comment. n. 8 that loss "does not ... include interest the victim could have earned on such funds had the offense not occurred." This language does not refer to the interest a borrower agrees to pay in return for a loan fraudulently obtained. *See, e.g., United States v. Porter,* 145 F.3d 897, 900–01 (7th Cir.1998) (collecting cases). The language refers only to the speculative return the victim could have earned elsewhere had the loan not been obtained by the defendant.