**Susana FERREIRA, Petitioner–Appellant,**

v.

**John ASHCROFT, Attorney General; Ronald J. Smith, Respondents–Appellees.**

No. 03–16966.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2004.

Filed Dec. 1, 2004.

Vikram K. Badrinath, Tucson, AZ, for the petitioner-appellant.

Andrew C. MacLachlan, Assistant United States Attorney, Washington, DC, and

Cynthia M. Parsons, Assistant United States Attorney, Phoenix, AZ, for the respondents-appellees.

Before TROTT, McKEOWN, Circuit Judges, and SHADUR,* Senior District Judge.

TROTT, Circuit Judge.

Petitioner Susana Ferreira, a lawful permanent resident, appeals the district court's denial of her petition for writ of habeas corpus. Ferreira pled guilty to one count of False Statement to Obtain Aid in violation of California Welfare and Institutions Code ("WIC") section 10980(c)(2). On account of that conviction, an immigration judge concluded that Ferreira had been convicted of an aggravated felony and found her removable from the United States and ineligible for relief from removal. Ferreira contends that her conviction did not constitute an aggravated felony. She further argues that the Board of Immigration Appeals ("BIA") violated her due process rights when it affirmed the immigration judge's decision, without comment, pursuant to the new BIA streamlining provisions. Because Ferreira's conviction involved fraud or deceit with a loss to a victim exceeding $10,000, and because streamlining does not violate an alien's due process rights, we affirm the district court's denial of Ferreira's habeas petition.

## BACKGROUND

Ferreira, a native and citizen of Venezuela, was admitted to the United States in 1980 as a lawful permanent resident. Between 1997 and 2000, Ferreira was convicted of one petty theft violation and two drug related charges. Ferreira pled guilty in 1998 to welfare fraud pursuant to WIC section 10980(c)(2). Ferreira's plea agreement to the welfare fraud charge required her to pay $22,305 in restitution to the State of California.

The Immigration and Naturalization Service ("INS") [1] issued a Notice to Appear charging Ferreira with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii)(conviction of two crimes involving moral turpitude) and § 1227(a)(2)(B)(i) (conviction for controlled substance). The INS subsequently lodged additional charges of removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) for conviction of an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43)(M)(i)(offense involving fraud or deceit with a loss in excess of $10,000).

An immigration judge found Ferreira removable because of her controlled substance convictions. The immigration judge also found Ferreira ineligible for cancellation of removal, concluding that her welfare fraud conviction constituted an aggravated felony. Pursuant to recently adopted streamlining procedures, the BIA affirmed the immigration judge's decision without comment.

Ferreira then filed a petition for writ of habeas corpus in the United States District Court for the District of Arizona. In her habeas petition, Ferreira argued that her conviction for welfare fraud did not constitute an aggravated felony because the offense did not involve an element of fraud or deceit and the government had

---

* Hon. Milton I. Shadur, Senior U.S. District Judge for Northern Illinois, sitting by designation.

1. Pursuant to the Department of Homeland Security Reorganization Plan, as of March 1, 2003, the INS was abolished and its functions were transferred to the Department of Homeland Security. See 6 U.S.C. § 542.

not proven that the amount of loss to the victim exceeded $10,000. Ferreira also argued that the BIA's decision to streamline her appeal violated her right to due process. The district court denied Ferreira's habeas petition, and Ferreira now appeals that denial.

## STANDARD OF REVIEW

We review the district court's denial of a habeas corpus petition de novo. *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir.2003). We review de novo the issue of whether a particular offense constitutes an aggravated felony. *Park v. INS*, 252 F.3d 1018, 1021 (9th Cir.2001). Due process challenges to immigration decisions are also reviewed de novo. *Sanchez–Cruz v. INS*, 255 F.3d 775, 779 (9th Cir.2001).

## DISCUSSION

### A. Aggravated Felony

Under 8 U.S.C. § 1227(a)(2)(A)(iii), an alien is removable if he or she has been convicted of an aggravated felony. An aggravated felony conviction also renders an alien ineligible for cancellation of removal. 8 U.S.C. § 1229b(a)(3). In determining whether an offense qualifies as an aggravated felony, we look to the statute under which the person was convicted and compare its elements to the relevant definition of an aggravated felony in 8 U.S.C. § 1101(a)(43). *See Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The first task is to make a categorical comparison. *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir.2002). Under this "categorical approach," an offense qualifies as an aggravated felony "if and only if the full range of conduct covered by [the criminal statute] falls within the meaning of that term." *Id.* (citation and internal quotation marks omitted). If the statute of conviction is not a categorical match because it criminalizes both conduct that

does and conduct that does not qualify as an aggravated felony, we then proceed to a "modified categorical approach." *Id.*

Under the modified categorical approach, we conduct a limited examination of documents in the "record of conviction." *Id.* Upon this examination, we determine whether there is sufficient evidence to conclude that the alien was convicted of the elements of the generically defined crime even though his or her statute of conviction was facially overinclusive. *Id.* The record of conviction consists of a narrow, specified set of documents that includes "the state charging document, a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding and the judgment." *Hernandez–Martinez v. Ashcroft*, 343 F.3d 1075, 1076 (9th Cir.2003). Like the immigration judge and the BIA, we may not "look beyond the record of conviction itself to the particular facts underlying the conviction." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir.2004). If the record of conviction does not establish that the offense the petitioner committed qualifies as an aggravated felony, the government has not met its burden of proving that the defendant committed an aggravated felony. *Id.*

Ferreira was convicted under WIC section 10980(c)(2), which at the time of her conviction provided:

(c) Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, the person obtaining this aid shall be punished as follows:

\* \* \*

(2) If the total amount of the aid obtained or retained is more than four hundred dollars ($400), by imprisonment

in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both imprisonment and fine; or by imprisonment in the county jail for a period of not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

Thus, the elements of the statutory crime include: (1) "by means of false statement or representation or by impersonation or other fraudulent device, obtain[ing] or retain[ing] aid," and (2) in an amount more than $400. The two elements of the applicable aggravated felony definition are: (1) the offense "involves fraud or deceit," and (2) the "loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). As will be established by the following discussion, the first element of WIC section 10980(c)(2) is a categorical match with the first element of the aggravated felony definition in that both require an element of fraud or deceit. The second element is not a categorical match, but a modified categorical inquiry establishes that Ferreira's conviction involved a loss exceeding $10,000.

*1) WIC section 10980(c) Involves Fraud or Deceit Under the Categorical Approach*

■ Ferreira argues that the statute under which she was convicted does not "involve fraud or deceit" under the categorical approach. She argues that WIC section 10980(c) prohibits four types of conduct, including: (1) false statement; (2) false representation; (3) impersonation; or (4) fraudulent device, and that some but not all of these offenses involve fraud or deceit. We are not persuaded by Ferreira's interpretation of the statute. We conclude that WIC section 10980(c) and the first element of section 1101(a)(43)(M)(i)'s aggravated felony definition are a categorical match (i.e., both

require an element of fraud or deceit) because California caselaw provides that all convictions under WIC section 10980(c) necessarily involve an element of fraud or deceit.

In *People v. Camillo,* 198 Cal.App.3d 981, 989 n. 3, 244 Cal.Rptr. 286 (1988), the California Court of Appeal, after noting that "on its face subdivision (c) does not explicitly require that the false statement or representation be made knowingly or with intent to deceive or defraud," stated in dicta that "[a]bsent any requirement of scienter, the statute would be legally and constitutionally suspect." The court further concluded that "[n]o doubt such a requirement is implicit in the statute, particularly in light of its use of the phrase 'or other fraudulent device.' " *Id.*

In *People v. Ochoa,* although also in dicta, the California Court of Appeal reaffirmed this analysis. 231 Cal.App.3d 1413, 1420 n. 1, 282 Cal.Rptr. 805 (1991) ("A requirement that the false statement or representation be made knowingly or with intent to deceive or defraud appears to be an element of the crime described in Welfare and Institutions Code section 10980 subdivision (c) . . . but because the necessary mental state was not raised as an issue on appeal, we have no reason to so hold.").

Ferreira correctly asserts that both of the above statements are dicta, but the California Court of Appeal has specifically held that WIC section 10980(c)(2)'s predecessor statute, which contained language identical to the present statute, required proof of intent to defraud. *People v. Faubus,* 48 Cal.App.3d 1, 5, 121 Cal.Rptr. 167 (1975) (holding that "because of the legislative history of Welfare and Institutions Code section 11483, we conclude [that an intent to defraud] is also an ingredient of a violation of that statute"). Thus, California caselaw indicates that all convictions

under WIC section 10980(c)(2) involve fraud or deceit.

Ferreira argues that WIC section 10980(c) could not involve fraud or deceit because fraud or deceit is an explicit element in WIC section 10980(a) but not subsection (c). Subsection (c), Ferreira argues, is a lesser offense that does not involve fraud or deceit. Subsection (a) and (c) respectively provide:

(a) Any person who, *willfully and knowingly, with the intent to deceive,* makes a false statement or representation or knowingly fails to disclose a material fact in order to obtain aid under the provisions of this division or who, knowing he or she is not entitled thereto, attempts to obtain aid or to continue to receive aid to which he or she is not entitled, or to receive a larger amount than that to which he or she is legally entitled, is guilty of a misdemeanor, punishable by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine.

\* \* \*

(c) Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained or retained aid under the provisions of this division for himself or herself or for a child not in fact entitled thereto, the person obtaining this aid shall be punished as follows:

(1) If the total amount of the aid obtained or retained is four hundred dollars ($400) or less, by imprisonment in the county jail for a period of not more than six months, by a fine of not more than five hundred dollars ($500), or by both imprisonment and fine.

(2) If the total amount of the aid obtained or retained is more than four hundred dollars ($400), by imprisonment in the state prison for a period of 16 months, two years, or three years, by a fine of not more than five thousand dollars ($5,000), or by both imprisonment and fine; or by imprisonment in the county jail for a period of not more than one year, by a fine of not more than one thousand dollars ($1,000), or by both imprisonment and fine.

WIC § 10980 (emphasis added).

The California Court of Appeal has had difficulty determining how subsection (a) differs from subsection (c). *See Camillo,* 198 Cal.App.3d at 989 n. 3, 244 Cal.Rptr. 286 (stating that "it is unclear how subdivision (c) differs from subdivision (a)"). Ferreira is correct that only subsection (a), through its use of the "willfully and knowingly, with the intent to deceive" language, involves fraud or deceit on its face. Ferreira's interpretation that subsection (c) is a lesser offense that does not include an element of fraud or deceit, however, is inconsistent with California caselaw holding that subsection (c) also involves fraud or deceit. Additionally, the fact that subsection (c) provides for a *more severe* penalty than subsection (a) casts doubt on any argument that the California legislature intended subsection (c) to be a lesser offense than subsection (a). Finally, the legislature amended subsection (c) in 2002 to insert the phrase "willfully and knowingly, with the intent to deceive." This amendment is consistent with the California Court of Appeal's conclusion that the state legislative history of this provision indicates that an intent to defraud is an "ingredient" of a violation of subsection (c) (formerly WIC section 11483). *Faubus,* 48 Cal.App.3d at 5, 121 Cal.Rptr. 167.

Consistent with California caselaw, we conclude that Ferreira's conviction under WIC section 10980(c)(2) necessarily "involves fraud or deceit" and matches the first requirement of the aggravated felony definition under the categorical approach.

*2) Ferreira's Conviction Involved a Loss Exceeding $10,000 Under the Modified Categorical Approach*

 The second requirement of the 8 U.S.C. § 1101(a)(43)(M)(i) aggravated felony definition requires that the "loss to the victim or victims exceeds $10,000." WIC section 10980(c)(2) is significantly broader in that it punishes welfare fraud in any amount greater than $400. Thus, it punishes conduct that does and conduct that does not qualify as an aggravated felony. We therefore apply the modified categorical approach to determine whether Ferreira's conviction involved a loss to a victim in excess of $10,000. Our examination is limited to the "record of conviction," which includes the criminal complaint against Ferreira and Ferreira's plea agreement. *Hernandez–Martinez*, 343 F.3d at 1076.

The record of conviction establishes that the loss to the State of California exceeds $10,000. Specifically, the plea agreement set the amount of restitution at $22,305. We conclude that the immigration judge correctly looked to the restitution order in the plea agreement to determine that the loss to the State of California exceeded $10,000.

Ferreira cites *Chang v. INS*, 307 F.3d 1185 (9th Cir.2002), and *Munroe v. Ashcroft*, 353 F.3d 225 (3rd Cir.2003), for the proposition that the terms "restitution" and "loss to the victim" are not necessarily interchangeable. These cases, however, do not set forth a rule that immigration judges may not look to a restitution order to determine an amount of loss to a victim. Rather, they stand for the proposition that a restitution order does not establish the amount of loss when it directly contradicts the amount of loss specified in a plea agreement or indictment.

In *Chang,* a federal indictment charged Chang with fourteen counts of bank fraud, each count corresponding to a different bad check. 307 F.3d at 1187. Chang en-tered into a plea agreement under which he pled guilty only to count seven of the indictment, which charged Chang with cashing a $605.30 check that he knew was counterfeit. *Id.* The plea agreement emphasized in a separate paragraph the exact loss to the victim for the offense in count seven, stating that "[t]he defendant and the United States agree that the offense in Count Seven to which the defendant is pleading guilty involves a loss to the victim of $605.30." *Id.* The plea agreement also provided for restitution falling within the $20,000 to $40,000 range. *Id.* at 1187–88. In exchange for these concessions by Chang, the government voluntarily dismissed the remaining counts in the indictment. *Id.* Chang was eventually sentenced, pursuant to the plea agreement, to eight months in prison and ordered to pay $32,628.67 in restitution. *Id.* at 1188. This restitution amount included numerous other alleged fraudulent transactions to which Chang did not plead guilty, but for which he agreed to make restitution in the plea agreement. *Id.*

Despite the restitution order in the amount of $32,628.67, we held that Chang's bank fraud conviction did not satisfy the requirement that the loss to the victim exceed $10,000 because "the plea agreement firmly establishes that Chang's conviction caused a loss to the victim well below the statutory threshold." *Id.* at 1190. Rather than announce a sweeping rule that a restitution order is not evidence of the amount of loss, however, we noted that this case was distinguishable from other cases involving restitution orders because of "[t]he fact that the loss-to-the-victim amount for Chang's conviction is separately and clearly stated in the plea agreement." *Id.* at 1191.

We further supported our conclusion in *Chang* by noting that restitution may differ from the amount of loss because, under

the United States Sentencing Guidelines, "relevant conduct for sentencing purposes need not be admitted, charged in the indictment, or proven to a jury, in order to be used to impose a restitution order or enhanced sentence." *Id.* at 1190.

In *Munroe,* the Third Circuit held that under certain circumstances the amount of restitution ordered is not controlling as to the amount of loss to the victim. 353 F.3d at 227. There, an indictment charged Munroe with two counts of theft by deception. The two counts alleged that he had unlawfully obtained $1,070 and $10,500 from a bank. Munroe was convicted and ordered to pay restitution in the amount of $1,022 on the first indictment and $10,500 on the second. *Id.* at 226. After the INS lodged removability charges against Munroe, the county prosecutor's office and Munroe jointly moved the Superior Court to reduce the restitution order to $9,999. *Id.* The court held that Munroe's conviction resulted from a loss to a victim exceeding $10,000 even though the restitution order was reduced to an amount less than $10,000. *Id.* at 227. In language that underscores the exceptional facts of that case, the court concluded:

> The amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim if the plea agreement or the indictment is unclear as to the loss suffered. But when the amount of restitution ordered is not based on a finding as to the amount of the loss but is instead intended solely to affect the defendant's immigration status, the amount of restitution is not controlling.

*Id.*

The present case is distinguishable from *Chang* and *Munroe* in at least two respects. First, both *Chang* and *Munroe* involved an amount of loss specified in a plea agreement or indictment that directly contradicted the restitution order. Here, the complaint against Ferreira did not indicate a specific amount of loss but stated only that it was "exceeding $400." The plea agreement set restitution at $22,305, an amount *consistent* with, not contrary to, the complaint.

The second distinguishing feature is that the *Chang* court relied on the fact that the Federal Sentencing Guidelines allow for consideration of conduct not charged in an indictment or proven to a jury in setting an amount of restitution. 307 F.3d at 1190. In contrast, California law provides that a restitution order in favor of a government agency shall be calculated based on the actual loss to the agency. CAL. PENAL CODE § 1202.04(f) (providing that a victim of crime shall receive restitution directly from a defendant "in an amount established by court order, *based on the amount of loss claimed by the victim* or victims or any other showing to the court") (emphasis added).

In *People v. Crow,* another case involving welfare fraud under WIC section 10980(c), the California Supreme Court considered the manner in which a restitution order is calculated where a defendant defrauds a government agency. 6 Cal.4th 952, 954–55, 26 Cal.Rptr.2d 1, 864 P.2d 80 (1993). After finding that the defrauded government agency was entitled to restitution, the court held that "the defrauded agency's 'loss' should be calculated by subtracting the amount the government would have paid had no acts of fraud occurred from the amount the government actually paid." *Id.* at 961–62, 26 Cal.Rptr.2d 1, 864 P.2d 80.

*Crow* involved former California Government Code section 13967 rather than Penal Code section 1202.04, but its holding is still dispositive as to its instruction that a restitution order in favor of a government agency be set at the amount of loss to the agency. In 1994, the California legislature

consolidated the restitution provisions of former Penal Code section 1202.4 and Government Code section 13967 into current Penal Code section 1202.4, and the pertinent language interpreted in *Crow* is identical to that in the current statute. *See People v. Collins,* 111 Cal.App.4th 726, 730 n. 5, 3 Cal.Rptr.3d 889 (2003). Recent cases continue to recognize that *"People v. Crow* . . . governs how penal reimbursement is determined under section 1202.4. The defrauded agency's 'loss' should be calculated by subtracting the amount the government *would have paid had no acts of fraud occurred* from the amount the government actually paid." *People v. Hudson,* 113 Cal.App.4th 924, 928, 7 Cal. Rptr.3d 114 (2003) (internal quotation marks omitted).

Thus, the immigration judge correctly rejected Ferreira's argument that the restitution order is not a reliable source of the amount of loss to the State of California. California courts are required to order restitution "based on the amount of loss claimed by the victim." CAL. PENAL CODE § 1202.04(f). As the immigration judge noted, nothing in this case indicates that the order did otherwise.

## B. BIA Streamlining Provision

 To address a burgeoning caseload and a growing adjudicatory delay, the INS promulgated regulations in 1999 to "streamline" administrative appeals. Prior to adoption of the streamlining regulations, a three-judge BIA panel would review an immigration judge's decision. As explained in 8 C.F.R. § 1003.1(e)(4)(i), the streamlining regulations authorize a single BIA member to affirm the immigration judge's decision without opinion if:

the Board Member determines that the result . . . was correct; that any errors . . . were harmless or nonmaterial; and that (A) The issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or (B) The factual and legal questions raised on appeal are not so substantial that three-Member review is not warranted.

Ferreira argues that application of the streamlining procedures to her case violated her due process rights. This argument is foreclosed, however, by our recent decision in *Falcon Carriche v. Ashcroft,* holding that "streamlining does not violate an alien's due process rights." 350 F.3d 845, 848 (9th Cir.2003). Ferreira attempts to distinguish her case from *Falcon Carriche* in that the claim advanced there was based on a discretionary application for cancellation of removal, while her claim is based upon a nondiscretionary question of pure deportability. In *Falcon Carriche,* we applied the three-part *Mathews v. Eldridge* test and broadly concluded that streamlining does not violate due process rights. *Id.* Then, because the petitioner argued that "even if streamlining is constitutional, the discretionary nature of the hardship inquiry precludes streamlining in cancellation of removal cases," we went on to find that streamlining does not violate due process rights even in cases that require the use of discretion. *Id.* at 848, 852. Thus, under *Falcon Carriche,* streamlining does not violate an alien's due process rights regardless of whether the issue before the immigration judge involves the use of discretion.

To the extent that Ferreira challenges the BIA's decision to streamline her particular case, that argument collapses into our review of the merits of her case. As we pointed out in *Falcon Carriche,* "[t]he decision to streamline becomes indistinguishable from the merits. Were we to find an error, we would either grant relief if permitted or simply remand to the BIA to proceed in a manner consistent with our decision." *Id.* at 855. Because the immi-

gration judge properly found that Ferreira had been convicted of an aggravated felony, we need not consider whether the BIA properly streamlined Ferreira's case. *See id.* ("where we can reach the merits of the decision by the [immigration judge] or the BIA, an additional review of the streamlining decision itself would be superfluous").

### CONCLUSION

We conclude that Ferreira's conviction under WIC section 10980(c) constitutes an aggravated felony. California caselaw establishes that a conviction under WIC section 10980(c) involves an element of fraud or deceit. The record of conviction, specifically the plea agreement setting restitution at $22,305, establishes that the loss to the State of California exceeded $10,000. Finally, under *Falcon Carriche*, the BIA did not violate Ferreira's due process rights by streamlining her appeal. We therefore AFFIRM the district court's denial of Ferreira's habeas petition.