**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BHUPINDER KAUR KHARANA,
                    *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

                    *Respondent.*

No. 04-71335

Agency No.
A40-052-358

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 14, 2007—San Francisco, California

Filed May 29, 2007

Before: J. Clifford Wallace, Dorothy W. Nelson, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge D.W. Nelson;
Concurrence by Judge Wallace

**COUNSEL**

Saad Ahmad, Law Offices of Minter & Ahmad, Fremont, California, for the petitioner.

William C. Minick (argued) and Earle B. Wilson (briefed), Office of Immigration Litigation, Civil Division, United States Department of Justice, for the respondent.

---

**OPINION**

D.W. NELSON, Senior Circuit Judge:

This case concerns the meaning of Immigration and Nationality Act ("INA") § 101(a)(43)(M)(i), 8 U.S.C. § 1101(a)(43)(M)(i),[1] which defines the term "aggravated felony" to include "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." We must decide whether a defendant who pleads guilty to fraudulently appropriating more than $10,000 but subsequently makes her victims whole has "paid down" the "loss to the victims" below the statutory threshold so that her offense no longer qualifies as an aggravated felony. We answer in the negative and deny the petition for review.

## I. Background

In August 2001, Petitioner Bhupinder Kharana ("Petitioner" or "Kharana"), a lawful permanent resident of the United States, was charged in a state court with four counts of obtaining money by false pretenses in violation of California Penal Code § 532. The felony complaint alleged that Petitioner, by "false and fraudulent representation[s] and pretense[s], defraud[ed]" four victims of $11,000, $23,000, $17,000, and $26,250, respectively. Petitioner pled *nolo contendere* to all four counts. At some point thereafter, Petitioner repaid the stolen money.[2]

---

[1]Statutory references are to the INA unless otherwise indicated.

[2]The parties dispute whether Kharana returned the money before or after sentencing by the California court and whether she made "restitu-

In 2003, the Department of Homeland Security ("DHS") charged Kharana with removability under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). Specifically, DHS alleged Kharana had been convicted, after admission to the United States, of an aggravated felony within the meaning of § 101(a)(43)(M)(i). Arguing that her post-plea payment of restitution reduced the loss to her victims below the $10,000 threshold, Kharana moved to terminate removal proceedings. An Immigration Judge ("IJ") denied the motion, found Petitioner removable as charged, and ordered her removed to India. The IJ reasoned that, in the context of a conviction obtained by plea, the "loss to the victim or victims" under § 101(a)(43)(M)(i) means the amount of loss to which the defendant pled guilty. The IJ noted that where the amount of loss is not clear from the plea agreement or charging documents, the amount of court-imposed restitution may be a useful indicator of loss. In Kharana's case, however, the amount of loss was apparent on the face of the felony complaint, and the IJ considered any post-plea restitution to be irrelevant to the inquiry.

Petitioner appealed to the Board of Immigration Appeals ("BIA" or "Board"). In an unpublished, one-member decision, the Board dismissed Kharana's appeal, explaining that "[r]estituion does not change the nature of the crime or the fact that loss did occur."[3] This timely petition for review followed.

(Text continued on page 6377)

---

tion" pursuant to a court order or on her own initiative. The administrative record is unclear on both points. What is not in dispute is that, in entering her plea, Kharana admitted to defrauding her victims of over $77,000. Further, there is no question that Petitioner returned the money only after her conduct was detected by law enforcement and made the subject of a criminal prosecution. Under these circumstances, we need not resolve the parties' factual disputes because the repayments had no effect on the nature of the underlying crime or the fact that a certain level of loss occurred.

[3]Citing *Matter of Onyido*, 22 I. & N. Dec. 552 (BIA 1999), the BIA also suggested that even if Kharana's crime did not cause any actual loss, it

could be considered an aggravated felony under INA § 101(a)(43)(U), 8 U.S.C. § 1101(a)(43)(U), which defines as an aggravated felony any "attempt . . . to commit an [aggravated felony] offense." Kharana argues that because she was not charged with removability under § 101(a)(43)(U), the Board violated her due process right to fair notice. However, because Kharana was removable under § 101(a)(43)(M)(i) for causing actual losses in excess of $10,000, it is irrelevant that the BIA suggested an alternative uncharged ground for removal.

Our concurring colleague makes the related but distinct claim that Kharana would be removable even if her crime did not cause any actual loss because "*intended* loss satisfies section (M)(i)'s loss requirement." Concurring op. at 4. Neither the BIA nor any court has so held and this is not the law.

Read in context, this court's statement in *Li v. Ashcroft* that, "if the record of conviction demonstrates that the jury in Petitioner's case actually found that Petitioner caused, or intended to cause, a loss to the government of more than $10,000, the modified categorical approach will be satisfied," 389 F.3d 892, 897 (9th Cir. 2004), plainly means that where an alien is found removable under *both* § 101(a)(43)(M)(i) *and* § 101(a)(43)(U), an intent to defraud a victim of more than $10,000 satisfies the loss requirement under the latter subsection but not the former. That the *Li* court did not differentiate between the two subsections *in the same paragraph* as the quoted language does not imply otherwise. Elsewhere in the opinion, the court was quite clear to contrast § 101(a)(43)(M)(i) which requires that "the offense must also have resulted in a loss to the victim or victims of more than $10,000," 389 F.3d at 896, with § 101(a)(43)(U) under which "intended loss can satisfy the [requirement]," *id.* n.8. *See also Ming Lam Sui v. INS*, 250 F.3d 105, 118-19 (2d Cir. 2001) (holding that where an alien has the requisite intent to defraud, but has not taken a *substantial step* towards completion of the crime, the alien is not removable under the attempt subsection—§ 101(a)(43)(U)—and "may [not] be removed pursuant to subsection (M)(i) alone, since the loss to the victims as a result of his actions did not exceed $10,000").

Indeed, interpreting § 101(a)(43)(M)(i) such that a conviction involving an unsuccessful attempt to obtain more than $10,000 counts as a conviction "in which the loss to the victim or victims exceeds $10,000" flies in the face of the plain meaning of the statute. Further, such an interpretation would render subsection (U) nugatory as it relates to subsection (M)(i) because all attempts to fraudulently obtain more than $10,000 under the former subsection would also qualify as aggravated felonies under the lat-

## II. Jurisdiction and Standard of Review

Because this case presents a question of law—whether Kharana's offense qualifies as an aggravated felony—we have jurisdiction under 8 U.S.C. § 1252, as amended by the REAL ID Act. *See Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1053 (9th Cir. 2006). We review whether Kharana's conviction constitutes an aggravated felony de novo. *Id.*[4]

## III. Analysis

[1] To determine whether Kharana was convicted of an aggravated felony, we follow the two-step approach of *Taylor v. United States*, 495 U.S. 575 (1990). *Li v. Ashcroft*, 389 F.3d 892, 895 (9th Cir. 2004). First, we make a categorical comparison of the generic crime—here the "aggravated felony" defined in § 101(a)(43)(M)(i)—and the crime of conviction. *Id.* If the crime of conviction is broader than the generic crime, we employ a "modified categorical" approach to determine whether "the record . . . unequivocally establish[es] that the [alien] pleaded guilty to all the elements of the generic offense." *Id.* at 896 n.7 (quotation and citation omitted).

---

ter subsection. Because of the traditional "deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment," *Penn. Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 562 (1990) (superseded by statute on other grounds as stated in *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)), such a construction is impermissible.

[4]The principles of deference to agency interpretations delineated in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-44 (1984), are generally applicable when a court reviews the BIA's construction of the Immigration and Nationality Act. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). However, statutory interpretations announced in unpublished one-member BIA opinions do not qualify for *Chevron* deference because they do not represent an exercise of congressionally-delegated lawmaking authority. *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1014 (9th Cir. 2006). Because Kharana appeals from an unpublished one-member opinion, and there is no binding agency precedent on-point (either in the form of a regulation or a published BIA case), we do not apply *Chevron*.

**[2]** The elements of the relevant generic crime are "(1) the offense 'involves fraud or deceit,' and (2) the 'loss to the victim or victims exceeds $10,000.' " *Ferreira v. Ashcroft*, 390 F.3d 1091, 1096 (9th Cir. 2004). Petitioner was convicted of violating California Penal Code § 532, which provides:

> Every person who knowingly and designedly, by any false or fraudulent representation or pretense, *defrauds* any other person of money, labor, or property, whether real or personal, *or* who causes or procures others to report falsely of his or her wealth or mercantile character, and by thus imposing upon any person obtains credit, and thereby *fraudulently* gets possession of money or property, or obtains the labor or service of another, is punishable in the same manner and to the same extent as for larceny of the money or property so obtained.

Cal. Penal Code § 532(a) (West 2006) (emphases added).

**[3]** We have no difficulty determining that a conviction under California Penal Code § 532 is categorically a conviction involving fraud or deceit. *See, e.g., People v. Ashley*, 267 P.2d 271, 279 (Cal. 1954) (intent to defraud is a necessary element of theft by false pretenses). With respect to the "loss to the victim(s)" element, however, the statute of conviction clearly criminalizes a broader range of conduct than the generic offense.

**[4]** Therefore, the question before this court is whether, pursuant to "a limited examination of documents in the record of conviction," *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002), we may conclude that Kharana's conviction involved a loss to her victim or victims in excess of $10,000. The "record of conviction" includes, among other things, the criminal charging document, guilty pleas, and the judgment. *Ferreira*, 390 F.3d at 1095.

**[5]** In this case, the state charging document alleged that Kharana caused her victims to suffer more than $10,000 in losses. The losses outstanding at the time of Kharana's plea were accurately reflected in the felony complaint. This would seem a sufficient ground to conclude that the conviction involved a loss greater than $10,000. However, Kharana contends on appeal that she "paid down" the losses to her victims to $0 and is therefore not removable as charged.

**[6]** Petitioner asserts that because the INA fails to define "loss to the victim or victims" with any precision, we ought to look to the manner in which losses are calculated for the purpose of determining offense levels under the United States Sentencing Guidelines ("USSG" or "Guidelines"). Under the Guidelines, the offense level for a basic economic crime such as theft by false pretenses may be increased depending on the dollar amount of "loss" occasioned by the crime. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1) (2006). Kharana asserts that where a criminal defendant restores stolen money or property prior to sentencing, a court applying the guidelines must credit the restored amount against the loss calculation.

**[7]** We do not decide whether the approach to calculating loss under the Guidelines should be transported into the removal context. Even if the meaning of loss under the Guidelines was relevant to the "loss to the victim or victims" calculation under the INA, Petitioner would not benefit. Kharana simply misunderstands the Guidelines' treatment of loss. Under the Guidelines, the "actual loss" occasioned by an economic offense is the "reasonably foreseeable pecuniary harm that resulted from the offense." U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(A)(i) (2006). However, the Guidelines do not count amounts stolen by a criminal defendant but then returned to the victim *before the offense was detected* as losses. U.S. Sentencing Guidelines Manual § 2B1.1 cmt. n.3(E)(i) (2006). In contrast, a defendant who returns stolen money only after detection does not receive a so-called credit

against loss. *United States v. Bright*, 353 F.3d 1114, 1118 (9th Cir. 2004). This is so because " '[r]epayments before detection show an untainted intent to reduce . . . loss,' whereas '[r]epayments after detection may show no more than an effort to reduce accountability.' " *Id.* (quoting *United States v. Stoddard*, 150 F.3d 1140, 1146 (9th Cir. 1998)); *see also United States v. Mummert*, 34 F.3d 201, 204 (3d Cir. 1994) ("A defendant in a fraud case should not be able to reduce the amount of loss for sentencing purposes by offering to make restitution after being caught.") (cited with approval in *United States v. Davoudi*, 172 F.3d 1130, 1135 (9th Cir. 1999)).

[8] In this case, Kharana repaid the stolen money only *after her fraudulent scheme was discovered*, and indeed only after she had been the subject of a criminal prosecution. Under the USSG, a reduction in the amount of loss on this basis would "distort the magnitude of [her] crime" and would be inappropriate. *Bright*, 353 F.3d at 1119. Therefore, even if we assumed, without deciding, that the USSG provided guidance as to the proper method of calculating loss, Kharana would not benefit.[5]

---

[5]Petitioner misreads *United States v. Galbraith*, 20 F.3d 1054 (10th Cir. 1994). That case decidedly does not hold, as Petitioner argues, "that if a defendant makes restitution of all or part of a loss prior to sentencing, the actual loss to [the] victim(s) is reduced under the Federal Sentencing Guidelines." *Galbraith* did not involve the payment of restitution at all. Indeed, the case did not even involve a calculation of "actual loss" under the Guidelines. Rather, *Galbraith* holds that, where there is no actual loss because the "victim" was a creation of law enforcement during a sting operation and could not possibly be harmed, the amount of "intended or probable loss," used as an alternate measure, is zero. Not only is this case irrelevant to Kharana's petition for review, but this court has expressly disapproved the reasoning and holding in *Galbraith* and it has no precedential value here. *United States v. Robinson*, 94 F.3d 1325, 1328-29 (9th Cir. 1996).

Neither does *United States v. Davoudi*, 172 F.3d 1130 (9th Cir. 1999), provide support for Petitioner. That case merely stands for the proposition that the amount of loss caused in a fraudulent loan case does not include amounts the defrauded lender may recover *from assets pledged to secure the loan. Id.* at 1135. Recovery by a lender of collateral securing a loan does not constitute restitution. Nor did Kharana fraudulently obtain a loan. *Davoudi* is not pertinent to this case.

The petition for review is **DENIED**.

---

WALLACE, Circuit Judge, concurring in the judgment:

Kharana is deportable if she was "convicted of an aggravated felony," 8 U.S.C. § 1227(a)(2)(A)(iii), which is defined as an "offense . . . involv[ing] fraud or deceit in which the loss to the victim or victims exceeds $10,000," 8 U.S.C. § 1101(a)(43)(M)(i). There is no dispute that Kharana's conviction under California Penal Code § 532(a) was for an offense involving "fraud or deceit." However, because section 532(a) does not require that the victim or victims incur loss, Kharana's statute of conviction is not a categorical match for subsection (M)(i). *See Taylor v. United States*, 495 U.S. 575, 599-602 (1990).

We may look to the state charging document, among other things, to determine whether Kharana's conviction involved loss to her victims exceeding $10,000. *See Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir. 2004). The felony complaint states that Kharana "did knowingly and designedly, and by false and fraudulent representation and pretense, defraud" her victims of more than $77,000. The felony complaint thus indicates losses that far exceed those required to qualify Kharana as an aggravated felon. One would think that would end the matter.

Kharana suggests, however, that because she made full restitution before the date of her sentencing, the loss to her victims did not exceed $10,000, and therefore her conviction does not qualify as an aggravated felony.

The Immigration and Nationality Act (INA) does not define "loss to the victim or victims," but the issue has been raised in cases. In *In re Onyido*, the petitioner fraudulently sought a $60,000 payment from an insurance company on a medical

policy, but agreed to settle for $15,000. 22 I. & N. Dec. 552, 553 (BIA 1999) (en banc). When he arrived at a meeting to sign a release and collect the $15,000, he was arrested. *Id.* at 554. After the petitioner was convicted under state law for fraud, an Immigration Judge (IJ) held that he was deportable under subsection (M)(i) as well as under 8 U.S.C. § 1101(a)(43)(U), which defines an aggravated felony as "an attempt or conspiracy to commit an offense described in [section 1101(a)(43)]." *Id.* at 553-54.

The Board of Immigration Appeals (Board) affirmed the IJ's subsection (U) determination and rejected the petitioner's contention that the subsection requires the victim to have suffered an "actual loss" that exceeds $10,000. *Id.* at 554. Although the petitioner had not been convicted of attempted fraud, the Board reasoned that his "actions support a conviction for attempted fraud which is a lesser included offense within a conviction for fraud under Indiana law." *Id.* According to the Board, the petitioner's failure to obtain the $15,000 therefore had "no consequence" under subsection (U). *Id.* The Board did not address whether the petitioner was also deportable under subsection (M)(i). *Id.* at 554-55.

We interpreted *Onyido* in *Li v. Ashcroft*, where the petitioner was convicted of eight fraud-related federal offenses. 389 F.3d 892, 894-97 (9th Cir. 2004). The former Immigration and Naturalization Service (INS) charged the petitioner as removable under section 1227(a)(2)(A)(iii) as one who had committed an aggravated felony as defined in subsections (M)(i), (U), and 8 U.S.C. § 1101(a)(43)(G), which defines an aggravated felony as "a theft offense . . . for which the term of imprisonment [is] at least one year." *Id.* at 894. The IJ agreed with the INS with respect to subsections (M)(i) and (U) and did not rule on the argument under subsection (G). *Id.* at 894-95. The Board affirmed. *Id.* at 895.

On petition for review, we held that the record of conviction was not adequate to establish that the jury actually found

the requisite amount of loss. *Id.* at 899. Our discussion of the generic crimes at issue in the case is revealing. Citing *Onyido*, we set forth the two elements of the subsection (M)(i) generic crime — fraud and loss — and stated that either "[p]otential or intended loss" satisfy the second element under subsection (U). *Id.* at 896 n.8. *Li* thus establishes *Onyido's* holding as the law of this circuit. *Cf. Sui v. INS*, 250 F.3d 105, 115 (2d Cir. 2001) (according *Onyido* deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), and holding that the Board's interpretation of subsection (U) was reasonable).

Arguably, *Li* went on to answer the question left open by *Onyido*: whether intended loss can satisfy subsection (M)(i)'s loss requirement. Without differentiating between the generic crimes set forth in subsections (M)(i) and (U), *Li* stated that "if the record of conviction demonstrates that . . . Petitioner caused, *or intended to cause*, a loss . . . of more than $10,000, the modified categorical approach will be satisfied." 389 F.3d at 897 (emphasis added). *Li* suggests that Kharana's argument concerning her victims' losses after restitution is mistaken because *intended* loss satisfies subsection (M)(i)'s loss requirement, and it is undisputed that her record of conviction establishes her intent to defraud her victims of an amount in excess of $10,000.

In any case, this is the proper interpretation of subsection (M)(i), and I support it. By its plain terms, subsection (U) does not provide any additional gloss on the term "loss" as it appears in subsection (M)(i). "Loss" therefore has the same meaning regardless of whether the alien is charged under subsections (M)(i) or (U). Because we have held that "loss" means intended loss under subsection (U), this holding applies with equal force under subsection (M)(i).

This makes sense. In many cases, such as the one now before us, the fact of restitution will not be reflected in the record of a fraud conviction because restitution bears neither

on the criminal act itself nor on the mental element required for criminal liability. Subsection (M)(i), in my view, should not be interpreted to require the government to establish facts unrelated to the elements of a typical completed fraud offense. True, a person subject to prosecution for a fraud offense may offer evidence that she returned money or the like to her victim that she did not intend to obtain. But the weight of this evidence will be reflected in the fact-finder's determination with respect to intended losses. This finding, in turn, will decide whether the criminal alien is eligible for deportation.

I disagree with the majority that this interpretation necessarily renders subsection (U) nugatory as it relates to subsection (M)(i). A criminal convicted only of *attempting* to commit an offense involving fraud or deceit may still be removable under the former section, but not the latter.

Once more, this should end our discussion. But based on two drive-by references to the United States Sentencing Guidelines (Guidelines) suggesting "a judge is required to make specific findings as to the amount of loss to compute defendant's punishment," the majority advances an unnecessary argument that I question.

The INA and the Guidelines are not necessarily "similar statutes . . . to be interpreted in a similar manner." *United States v. Ressam*, 474 F.3d 597, 602 (9th Cir. 2007). The Supreme Court has described "deportation as a 'purely civil action' separate and distinct from a criminal proceeding." *United States v. Amador-Leal*, 276 F.3d 511, 516 (9th Cir. 2002)*, quoting INS v. Lopez-Mendoza,* 468 U.S. 1032, 1038 (1984). "[D]eportation is not punishment for the crime." *Id.* The argument compares apples to oranges.

In addition, reliance on the Guidelines is misplaced. Under the Guidelines, a defendant's offense level increases with the amount of "loss" occasioned by her crime. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1) (2006). The sentencing

court is instructed that "loss is the greater of actual loss or intended loss." *Id.* at § 2B1.1 cmt. n.3(A). " 'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense," whereas " '[i]ntended loss' [ ] means the pecuniary harm that was intended to result from the offense; and [ ] includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id.* at § 2B1.1 cmt. n.3(A)(i), (ii). Regardless of which measurement of loss is used, the Guidelines require that the court "credit[ ] against loss" the amount the defendant returned to the victim before the offense was detected. *Id.* at § 2B1.1 cmt. n.3(E)(i). This is so because "[r]epayments before detection show an untainted intent to reduce any loss." *United States v. Bright*, 353 F.3d 1114, 1118 (9th Cir. 2004) (quotation marks and citation omitted).

Credit against loss is not loss, and there is no credit-against-loss provision in the aggravated felony statute. Likewise, the intent to repay a loss is not the same as the absence of intent to cause a loss in the first instance. Therefore, to the extent Kharana may have made restitution, such restitution does not implicate, for subsection (M)(i) purposes, the amount of loss to her victims.

The majority, as I understand the argument, determines that Kharana does not in fact qualify for a downward departure under section 2B1.1 cmt. n.3(E)(i) because she did not make restitution before her offense was detected. The majority thus concludes that even if Kharana's eligibility for sentencing relief were relevant to our interpretation of subsection (M)(i), she does not satisfy the conditions of her own argument.

The majority has no basis for determining that Kharana made restitution at all, let alone only after her offense was detected. Neither the Board nor the IJ made findings on the issue. The parties' briefs are contradictory, the record of conviction is unrevealing, and oral argument did not clarify matters. Kharana's counsel answered "Yes" to the question, "Is

it true that on the date of her plea, the felony complaint accurately stated the losses caused by Mrs. Kharana's conduct?" Tr. of Oral Argument at 0:40-0:55, *Kharana v. Gonzales*, No. 04-71335 (Feb. 14, 2007). But counsel also said that "the vast majority of the restitution, which was under $10,000, was paid before [Kharana] pled guilty to the crime." *Id.* at 1:30-1:47. This latter statement leaves open the possibility that restitution occurred prior to detection.

The majority's position is made all the more perplexing by its statement that Kharana is removable for having "caused actual losses in excess of $10,000." Majority Op. at n.3. The majority does not tell us what "actual loss" means or how it is calculated, and it does not explain why subsection (M)(i) encompasses this principle of loss. If actual loss necessarily excludes amounts returned to the victim, then why does the majority assume, without deciding, that the Guidelines' credit-against-loss provision is relevant to our interpretation of subsection (M)(i)? If, on the other hand, actual loss accounts for amounts returned to the victim, then why does Kharana nevertheless qualify as an aggravated felon? The majority fails to answer these necessary questions.

Therefore, I would not address, in dicta or otherwise, when any restitution occurred. Kharana became deportable when she pled guilty to knowingly and fraudulently taking possession of the money. *See* Cal. Penal Code § 532(a).